**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Khaddfi EL, Appellant.**

Superior Court of Pennsylvania.

Argued June 27, 2007.

Filed Aug. 31, 2007.

Reargument Denied Oct. 31, 2007.

---

4. Given our disposition, we need not address    Appellant's remaining issues.

Tom Gray, Philadelphia, for appellant.

Suzan Willcox, Asst. Dist. Atty., Philadelphia, for the Com., appellee.

BEFORE: TODD, GANTMAN and KELLY, JJ.

OPINION BY KELLY, J.: ·

¶ 1 Appellant, Khaddfi El, appeals the judgment of sentence of 11½ to 23 months' imprisonment entered in the Philadelphia County Court of Common Pleas following his non-jury conviction of possession with intent to deliver a controlled substance.[1] We hold that the decision to reject without inquiry a request to proceed *pro se* made after the defendant's jury-waiver colloquy has been completed rests within the trial court's discretion. We also note that probable cause exists to search a suspect incident to an arrest when a trained and experienced narcotics officer observes two individuals exchange money for what appears to be drugs or a container commonly used to hold drugs in a neighborhood known for drug-trafficking, and the seller flees upon the officer's approach.

¶ 2 On October 13, 2005, Officers McCauley and Maresca, both narcotics agents, were on patrol in a marked police vehicle near 22nd and Catherine Streets in Philadelphia. At approximately 8:15 p.m., while stopped at a traffic light, the officers observed Appellant and an unidentified individual standing in the rain at the mouth of an alley approximately fifty feet away. After receiving money from the unidentified individual, Appellant pulled a clear plastic bag from his waistband. The officers immediately approached Appellant, who quickly shoved the clear plastic bag back in his pants and attempted to enter a nearby car, but was apprehended before he could drive away. They searched Appellant and recovered a bag containing eight packets of cocaine and $82.

¶ 3 At trial, Officer McCauley testified that he had spent the majority of his nine

1. 35 P.S. 780–113(a)(30).

years as a Philadelphia police officer as a narcotics agent, and was familiar with the area around 22nd and Catherine Streets. Between 1997 and 2000, he was assigned to the neighborhood's immediately adjacent district and has continually patrolled the area since 1997. Officer McCauley has conducted over 100 narcotics surveillances during his career and made numerous narcotics arrests in this vicinity. Previously, the local drug trade operated openly on the neighborhood's street corners, resulting in the categorization of the area as a locus of high crime and drug-trafficking. However, improvements to this area over the past six to seven years have caused drug transactions to move to more secluded locations. Currently, Officer McCauley, along with other agents of the Narcotics Bureau, routinely patrol, conduct surveillances, and make drug arrests in this community.

¶ 4 Appellant's non-jury trial was scheduled for March 7, 2006. On that day, after the trial court denied his motion to suppress the drugs and money, Appellant's counsel informed the trial court of Appellant's readiness to proceed to trial. After his jury-waiver colloquy, and moments before the non-jury trial was to begin, Appellant unsuccessfully requested to proceed *pro se.* Appellant was subsequently found guilty of possession with intent to deliver.

¶ 5 Appellant challenges his conviction on two grounds:[2] (1) he was subjected to an unreasonable search and seizure because Officers McCauley and Maresca did not have probable cause to arrest and search him; and (2) the trial court improperly denied his request to proceed *pro se.* Regarding his first issue, Appellant argues that the trial court erred in concluding

that the officers had probable cause because Officer McCauley's experience with 22nd and Catherine Streets was six years old and thus stale, and the neighborhood was not a high-drug trafficking area subject to citizen complaints and drug surveillances.

¶ 6 Our standard of review of an order denying a suppression motion is the following:

When reviewing an order denying a motion to suppress evidence, we must determine whether the evidence of record supports the factual findings of the trial court. In making this determination, this [C]ourt may only consider the Commonwealth's evidence and the defendant's evidence that remains uncontradicted. We view the Commonwealth's evidence, not as a layperson, but through eyes of a trained police officer. We do not review the evidence piecemeal, but consider the totality of the circumstances in assessing whether probable cause existed.... If the evidence supports the findings of the trial court, those findings bind us and we may reverse only if the suppression court drew erroneous legal conclusions from the evidence.

*Commonwealth v. Nobalez,* 805 A.2d 598, 600 (Pa.Super.2002) (citations omitted), *appeal denied,* 575 Pa. 692, 835 A.2d 709 (2003).

¶ 7 The Fourth Amendment of the United States Constitution and Article I, Section VIII of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures. U.S. Const. amend. IV; Pa. Const. art. I, § 8. "An officer may conduct a full custodial

---

**2.** The Commonwealth argues that Appellant waives these issues because he did not argue the suppression motion in terms of a custodial stop, but rather an investigatory stop, and

failed to raise the issue of self-representation at trial. Our review of the record reveals that Appellant properly preserved the issues.

search of a suspect when the suspect is lawfully arrested.... Consequently, the propriety of a search depends upon the validity of the arrest." *Commonwealth v. Clark*, 558 Pa. 157, 735 A.2d 1248, 1251 (1999) (citations omitted). The strictures of the United States and Pennsylvania Constitutions require the Commonwealth to obtain a warrant to arrest an individual in a public place unless there is probable cause to believe that the particular individual to be arrested committed a felony. *Id.* (citing *Commonwealth v. Travaglia*, 502 Pa. 474, 467 A.2d 288, 292 (1983), *cert. denied*, 467 U.S. 1256, 104 S.Ct. 3547, 82 L.Ed.2d 850 (1984)).

¶ 8 Questions of probable cause do not entail certainties. *Commonwealth v. Quiles*, 422 Pa.Super. 153, 619 A.2d 291, 298 (1993). Indeed, "[p]robable cause exists when criminality is one reasonable inference; it need not be the only, or even the most likely, inference." *Id.* The standard for probable cause is whether "the facts and circumstances within the officer's knowledge are sufficient to warrant" a reasonably cautious person to believe "that an offense has been or is being committed." *Clark*, *supra* at 164–65, 735 A.2d 1248 (quoting *Commonwealth v. Evans*, 546 Pa. 417, 685 A.2d 535, 537 (1996)). In determining whether this standard is satisfied, the circumstances of the arrest must be viewed in their totality. *Commonwealth v. Banks*, 540 Pa. 453, 658 A.2d 752, 752–53 (1995) (citing *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). "It is important to view all of the facts and the totality of the circumstances in order to avoid rendering a decision that is totally devoid of [the] commonsensical inferences [that are] drawn by trained police officers with regard to drug activity." *Commonwealth v. Van Wells*, 916 A.2d 1192, 1195 (Pa.Super.2007) (quotations omitted) (quot-

ing *Commonwealth v. Lawson*, 454 Pa. 23, 309 A.2d 391, 394 (1973)).

¶ 9 In *Banks, supra*, the Pennsylvania Supreme Court held that probable cause did not exist when a non-narcotics trained police officer observed a transaction involving money and an unidentified object between two individuals on a street corner, and the alleged seller fled after observing the officer's approach. *Id.* at 753. However, the Court specifically noted that the presence of additional factors could give rise to probable cause, such as (1) observation by a trained narcotics officer of a transaction involving an object identified as drugs or a container commonly used to hold drugs, (2) observation by a police officer of "multiple, complex, suspicious transactions," or (3) observation of a transaction after the police officer has been informed of illegal activity by an informant or citizen. *Id.*

¶ 10 In *In the Interest of T.F.*, 820 A.2d 1264, 1264–65 (Pa.Super.2003), *appeal dismissed*, 586 Pa. 510, 895 A.2d 545 (2006), this Court held that probable cause did not exist when a non-narcotics officer who had only two years of experience on the force could not identify the exchanged object as drugs or a container commonly used for holding drugs, there was no evidence that the neighborhood was known for drug trafficking, and the defendant did not flee after being approached by the officer. Contrarily, this Court in *Nobalez, supra*, found probable cause where the defendant fled after being approached by a highly experienced narcotics officer who observed a single transaction of an unidentified object between the defendant and an individual in a neighborhood known for drug trafficking. *Id.* at 600–02. The Court distinguished *Nobalez* from *Banks*, concluding that the additional factors present in *Nobalez* supported a finding of probable cause. *Id.* Appellant argues that *In the*

*Interest of T.F.* is indistinguishable and thus controls, rather than *Nobalez.* We disagree.[3]

¶ 11 Instantly, viewing the facts in their totality, there is sufficient evidence to support the trial court's finding of probable cause. Appellant erroneously analyzes each fact separately, arguing that because the facts here do not precisely mirror the facts of *Nobalez*, probable cause did not exist. *See Van Wells, supra* at 1195. Instead, the facts here more strongly support a finding of probable cause than those in *Nobalez.* Officer McCauley is a trained and experienced narcotics officer who has witnessed the drug trafficking techniques frequently used in the neighborhood, thus enabling him reasonably to infer that based on Appellant's behavior and location a drug transaction took place. *See Quiles, supra* at 298; *Nobalez, supra* at 601 (concluding that arresting narcotics officer's experience and familiarity with neighborhood "enabled him to know with reasonable certainty that Nobalez was conducting a drug sale"). Indeed, Officer McCauley testified to observing a "container commonly known to hold drugs being exchanged." *See Banks, supra* at 753; *see also Commonwealth v. Burnside*, 425 Pa.Super. 425, 625 A.2d 678, 679 (1993) (finding probable cause where police offi-

cer observed transaction of "small, blue plastic packets of the type the experienced officer knew commonly contained" drugs). Therefore, the finding by the trial court that a reasonably cautious person with Officer McCauley's knowledge would believe that Appellant was selling drugs is supported by the uncontroverted evidence. *See Clark, supra* at 1253.[4]

¶ 12 The second issue raised by Appellant is that the trial court erred in denying his request to proceed *pro se.* Appellant argues that his request was timely because it came prior to the start of the bench trial. Therefore, according to Appellant, because the trial court denied his timely request without an inquiry, his Sixth Amendment rights were violated.

¶ 13 For questions of law, our scope of review is plenary and standard of review is *de novo. See Commonwealth v. Mullins*, 591 Pa. 341, 918 A.2d 82, 84 (2007). Every defendant has the constitutional right to represent himself in criminal proceedings. *Commonwealth v. Vaglica*, 449 Pa.Super. 188, 673 A.2d 371, 373 (1996) (citing *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326, 1334 (1995)). However, this right is not absolute. *Id.* A defendant's request to proceed *pro se* must be timely and unequivocal and not made

3. The Pennsylvania Supreme Court has granted allocatur in *Commonwealth v. Dunlap*, 846 A.2d 674 (Pa.Super.2004) (*en banc*), *appeal granted*, 587 Pa. 510, 901 A.2d 982 (2006), to examine our *en banc* panel's application of *Banks* in a situation similar to the facts here. Because the Supreme Court has yet to issue a decision in *Dunlap*, we are obligated to follow the existing, controlling case law. *See Commonwealth v. Forbes*, 867 A.2d 1268, 1279 (Pa.Super.2005) (quoting *Commonwealth v. Martin*, 727 A.2d 1136, 1141 (Pa.Super.1999), *appeal denied*, 560 Pa. 722, 745 A.2d 1220 (1999)).

4. The Commonwealth also argued that the encounter between the officers and Appellant

was an investigatory stop and thus the reasonable suspicion standard should apply. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Because we have concluded that the officers had probable cause, it is unnecessary to apply a reasonable suspicion analysis. *But cf. Banks, supra* at 752–53 (conducting probable cause analysis where police officer observed occurrence of transaction on public street, defendant fled when officer approached, and officer searched defendant upon immediate capture); *In the Interest of T.F., supra* at 1265 (applying probable cause analysis to fact pattern similar to *Banks*).

for the purpose of delay. *Commonwealth v. Davido*, 582 Pa. 52, 868 A.2d 431, 438 (2005) (citing *U.S. v. Callwood*, 66 F.3d 1110, 1113 (10th Cir.1995)). "In reviewing the timeliness of the request to proceed *pro se*, courts generally consider the point in the proceedings that the request is being made." *Id.* This Court has held that when the request to proceed *pro se* is asserted after "meaningful trial proceedings have begun," it is within the discretion of the trial court. *Vaglica, supra* at 373.

¶ 14 In the context of jury trials, "meaningful trial proceedings have begun" once the jury selection process has commenced. *Id.* (citing *U.S. v. Lawrence*, 605 F.2d 1321 (4th Cir.1979)). The primary reason for categorizing jury empanelment as a meaningful trial proceeding is that the "defendant's trial strategy can influence the jurors selected, and the jurors selected can determine trial strategy." *Id.* There are also secondary reasons for this categorization. First, the jury selection process has "serious ramifications on the determination of guilt or innocence." *Id.* Additionally, the policy supporting the timeliness requirement, that is, "the need to minimize disruptions, to avoid inconvenience and delay, to maintain continuity, and to avoid confusing the jury," *id.*, is furthered because honoring a *pro se* request after the jury has been selected has the potential "to frustrate the orderly procedures of a court in the administration of justice." *Id.*; *Lawrence, supra* at 1325 (stating courts should not allow right to self-representation to become tool to delay or adversely influence trial process).

¶ 15 However, our courts have yet to address the issue of when a request to proceed *pro se* is untimely in the context of a non-jury trial. Such an analysis requires a determination of the commencement of "meaningful trial proceedings." *See Vaglica, supra* at 373. A defendant's trial strategy influences his decision of whether to waive his right to trial by jury, and similarly, waiving his right to trial by jury can affect his trial strategy. Moreover, the defendant's decision to waive his right to trial by jury has considerable consequences on the assessment of guilt or innocence. We find no significant distinction between the decision of whether to have the trial court act as jury, and the decision of which jurors to select, in the context of whether "meaningful trial proceedings have begun." *See id.* Equally important, in non-jury trials, there is often little time, if any at all, between the defendant's jury-waiver colloquy and the start of the bench trial. Requiring trial courts to honor every *pro se* request after the jury-waiver colloquy would create disruptions and delay, thus frustrating judicial economy. *See Lawrence, supra* at 1325.

¶ 16 Instantly, since November of 2005, when his non-jury trial was first scheduled, Appellant had been on notice that his trial would occur the next time he appeared in court. Only on March 7, 2006, after his trial had been rescheduled three separate times, his suppression motion denied, his having declared his readiness to proceed to trial, his jury-waiver colloquy completed, and moments before trial was to begin did Appellant, for the first time, express his desire to proceed *pro se*. As the record illustrates, Appellant had ample opportunity to request *pro se* status prior to his jury-waiver colloquy. Once the trial court concluded that his request was untimely, it had the discretion to determine that Appellant requested to proceed *pro se* only to obstruct the trial proceedings. *See id.* At that juncture, the trial court had the discretion to grant or reject Appellant's request. *See Vaglica, supra* at 373. Be-

cause the trial court correctly applied the law, we will not disturb its decision.

¶ 17 Judgment of sentence affirmed.

¶ 18 GANTMAN, J. concurs in the result.