**In the Interest of B.T.**

**Appeal of: B.T.**

Superior Court of Pennsylvania.

Submitted July 29, 2013.
Filed Dec. 9, 2013.

Karl Baker, Public Defender, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, participating party.

BEFORE: ALLEN, J., COLVILLE,* J., and STRASSBURGER,* J.

OPINION BY STRASSBURGER, J.:

B.T. (Appellant) appeals from the dispositional orders [1] of January 6, 2012, following his adjudication of delinquency based upon his commission of multiple burglaries [2] and related crimes. On appeal, Appellant challenges (1) the October 6, 2011 order denying his motion to dismiss for lack of jurisdiction, and (2) the October 21, 2011 order denying his motion to suppress.

---

* Retired Senior Judge assigned to the Superior Court.

1. Appellant purports to appeal from the adjudication of delinquency and the disposition. However, "[i]n juvenile proceedings, the final Order from which a direct appeal may be taken is the Order of Disposition, entered after the juvenile is adjudicated delinquent." *Commonwealth v. S.F.,* 912 A.2d 887, 889 (Pa.Super.2006). We have amended the caption accordingly.

2. 18 Pa.S.C. § 3502.

We affirm the dispositional order entered at case 3618; vacate the dispositional orders and adjudications of delinquency entered at cases 3613, 3615, 3616, and 3617; reverse the October 21, 2011 order denying Appellant's suppression motion; and remand the case for further proceedings consistent with this opinion.

On July 1, 2011, Detective Orlando Ortiz went to Appellant's home as part of an investigation into a series of burglaries. Appellant's father informed Detective Ortiz that Appellant was nine years old, and produced documentation reflecting a date of birth in November 2002 for Appellant.[3] Based upon this information, Detective Ortiz informed Appellant's father that Appellant was too young to be charged with a crime, but that he would like to talk to Appellant about additional burglaries and the other individuals involved. Detective Ortiz explained to Appellant's father that Appellant would not be charged with any criminal acts, and Appellant's father gave permission for Appellant to go with Detective Ortiz to the police station. Appellant, his father declining to go along, was transported in an unmarked police car, without restraints. At the station, Appellant ate pizza while Detective Ortiz interviewed him for approximately one hour. While Detective Ortiz subsequently drove Appellant home, Appellant pointed out houses that he and other participants had burglarized.

The next time the police interacted with Appellant was over a month later, when Appellant was caught in the act of a burglary and restrained by one of the victims until the police arrived. Having received information that Appellant was actually 15 years old,[4] the police arrested Appellant for that burglary as well as the others to which Appellant admitted having committed.

Appellant was charged in five separate juvenile petitions on August 13, 2011, with burglary and related crimes. On September 7, 2011, Appellant moved to dismiss the petitions, claiming that the juvenile court lacked jurisdiction because Appellant was under the age of ten. In response, the juvenile court ordered that Appellant undergo a bone age scan. At a subsequent hearing, radiologist Dr. Michael Nalbantian testified that the test results suggested, to a reasonable degree of medical certainty, that Appellant was 15.6 years old as of September 16, 2011, the date of the scan. Considering two standard deviations, which would account for nutritional defects and disease, Appellant would be at least 13 years and two months old. Finding this evidence credible, and the documentary evidence purporting Appellant to be only nine years old incredible, the juvenile court denied Appellant's motion to dismiss.

On October 21, 2011, a hearing was held on Appellant's motion to suppress the statements given to the police on July 1, 2011. Appellant claimed that the statements wherein he described his role in the burglaries should be excluded because they were given during the course of a custodial detention, and Appellant had not been advised of his *Miranda*[5] rights prior to questioning. *See* Motion to Suppress, 9/2/2011; N.T., 10/21/2011, at 23–35. Ap-

---

**3.** The documentation does not include a birth certificate, but rather consists of immigration paperwork from when Appellant entered the United States from Liberia in 2007.

**4.** The record does not explain what new information the police received between the time of the interrogation and the time of the arrest, nor why the information was unavailable to them before they interrogated Appellant.

**5.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

pellant also claimed that his confession was not knowing, intelligent, and voluntary. *See* Motion to Suppress, 9/2/2011; N.T., 10/21/2011, at 35–36. The juvenile court denied the motion, finding that *Miranda* warnings were not warranted because the police, relying upon information given by Appellant's father, believed that Appellant could not have been prosecuted due to his age.

Hearings were held on November 9 and November 22, 2011, concerning the various burglary charges. On January 6, 2012, the juvenile court adjudicated Appellant delinquent, and committed him to Abraxas Leadership Development program by separate dispositional orders of the same date filed at each docket number. On February 29, 2012, the juvenile court discharged Appellant from Abraxas and ordered him committed to George Junior Republic.

Appellant filed a timely notice of appeal following denial of reconsideration. Appellant presents two questions for this Court's review.

1. Did not the [juvenile] court err as a matter of law and deny Appellant due process under both the Pennsylvania and United States Constitutions when it denied his Motion to Dismiss Due to Lack of Jurisdiction, where Appellant alleged that at the time of the acts in question he was only 9 years of age and did not qualify as a delinquent child under 42 Pa.C.S.A. § 6302?

2. Did not the [juvenile] court err as a matter of law and violate Appellant's state and federal constitutional rights when it denied his Motion to Suppress Statements after Appellant was subjected to a custodial interrogation and the officer failed to administer *Miranda* warnings; additionally, did not the [juvenile] court err and violate Appellant's federal and state Constitutional rights when it held that there was good faith

exception to the *Miranda* requirements because the officer honestly believed Appellant was only 9 years old?

Appellant's Brief at 3.

■ "Because the question of subject matter jurisdiction is purely one of law, our standard of review is *de novo,* and our scope of review is plenary." *Commonwealth v. Brinson,* 30 A.3d 490, 492 (Pa.Super.2011) (citing *Commonwealth v. D.S.,* 903 A.2d 582, 584 (Pa.Super.2006)). However, factual findings and credibility determinations in juvenile proceedings are within the exclusive province of the hearing judge. *In re L.A.,* 853 A.2d 388, 391 (Pa.Super.2004).

■ "A petition alleging that a child is delinquent must be disposed of in accordance with the Juvenile Act." *In re J.J.,* 848 A.2d 1014, 1017 (Pa.Super.2004). A delinquent child is a "child ten years of age or older whom the court has found to have committed a delinquent act and is in need of treatment, supervision or rehabilitation." 42 Pa.C.S. § 6302.

■ At the hearing on Appellant's motion to dismiss, he offered the following documents as evidence that he was born in November 2002: Immigration and Naturalization Service form I–94, which was required for Appellant to enter the United States; a permanent resident's card issued by the U.S. Department of Homeland Security; and reports from his school confirming that Appellant was in third grade. The Commonwealth offered the testimony of Dr. Nalbantian who performed a bone age test, which involved comparing x-rays of Appellant's hand and wrist to an atlas of skeletal maturity, then consulting a table with standard deviations to arrive at an age within two standard deviations. N.T., 10/6/2011, at 9–12. To a reasonable degree of medical certainty, Dr. Nalbantian

opined that Appellant was 15.6 years old in the autumn of 2011.[6]  *Id,* at 20.

Based upon Dr. Nalbantian's testimony, as well as his own experience with juveniles, the hearing judge concluded that Appellant was 15 years old, and thus the birthdate proffered by Appellant was not correct.  *Id,* at 37–38.  Correspondingly, the hearing judge did not believe that the person identified in Appellant's documents was actually Appellant.  *Id.*  Therefore, having made the factual finding that Appellant was well beyond the age of ten at the time the alleged delinquent acts occurred, the hearing judge denied Appellant's motion.

Quite the contrary to Appellant's claim that the juvenile court "arbitrarily substituted" a number for the information in the documents, Appellant's Brief at 11, the juvenile court's factual finding is based upon its credibility determinations and is supported by the record.  Accordingly, that finding will not be disturbed on appeal.  *See In re A.D.,* 771 A.2d 45, 53 (Pa.Super.2001) (affirming the juvenile court's jurisdiction to handle case as a delinquency matter rather than a dependency matter based upon the hearing judge's factual determination that A.D. was ten years old at the time the delinquent acts occurred).  Therefore, because Appellant was a child of at least ten years of age at the time of the alleged delinquent acts, the juvenile court did not err in denying Appellant's motion to dismiss based upon lack of jurisdiction.[7]

■ Appellant's second argument challenges the denial of his suppression motion.  Our standard of review is as follows.

An appellate court may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the suppression court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.  It is also well settled that the appellate court is not bound by the suppression court's conclusions of law.  However, [w]hether a confession is constitutionally admissible is a question of law and subject to plenary review.

*In re V.C.,* 66 A.3d 341, 350–51 (Pa.Super.2013) (quoting *Commonwealth v. Knox,* 50 A.3d 732, 746 (Pa.Super.2012)).

■ The parties here do not dispute the following facts relevant to the suppression issue.  The police went to Appellant's home because they suspected that he had committed several burglaries in the area, and wished to take him to police headquarters for an interview.  N.T., 10/21/2011, at 8. When Appellant's father informed Detective Ortiz that Appellant was only nine years old, Detective Ortiz informed Appellant's father that Appellant "wasn't going to be charged" with a crime.  *Id.* Nonetheless, the police "wanted information on other co-defendants, or locations that [Appellant] might possibly [have] committed burglaries at in the area."  *Id.* With this

---

**6.**  Applying two standard deviations, Appellant was at least 13 years old, and may have been nearly 18 years old.

**7.**  Appellant raises concerns about possible collateral consequences of the juvenile court's age determination.  *See* Appellant's Brief at 11–12, N.T., 10/6/2011, at 33–34 ("[W]hen he goes to apply for a job, when he goes to apply

for the armed forces, when he goes to apply for a driver's license;  all of these organizations are going to run his Social Security number, and his Social Security number is going to say that he was born in 2002, which is what his documents say.").  However, those issues are neither presently before us nor ripe for review.

explanation, Appellant's father gave the police permission to take Appellant with them. *Id.* at 9. Having transported Appellant to the district headquarters, the police interrogated Appellant, without a parent or interested adult present, about the burglaries for more than an hour, eliciting admissions from him. *Id.* at 9–10. Thereafter, "while [the police] were driving [Appellant] home, he pointed out several houses that he had broken into, along with other co-defendants." *Id.* at 10. After it was determined that Appellant was over 10 years old, Appellant's admissions were used against him, and in fact were the only pieces of evidence tying Appellant to four of the five burglaries at issue in this appeal.

■ From these facts, we are left with the strictly legal question of whether Appellant's incriminating statements should have been excluded. We begin with an examination of the applicable principles of law.

To safeguard an uncounseled individual's Fifth Amendment privilege against self-incrimination, suspects subject to custodial interrogation by law enforcement officers must be warned that they have the right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney. Juveniles, as well as adults, are entitled to be apprised of their constitutional rights pursuant to *Miranda.* If a person is not advised of his *Miranda* rights prior to custodial interrogation by law enforcement officers, evidence resulting from such interrogation cannot be used against him. A person is deemed to be in custody for *Miranda* purposes when [he] is physically denied of his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action

or movement is restricted by the interrogation.

*In re R.H.,* 568 Pa. 1, 791 A.2d 331, 333 (2002) (plurality) (citations and quotation omitted).

■ "[I]f a suspect makes a statement during custodial interrogation, the burden is on the Government to show, as a prerequisite to the statement's admissibility in the Government's case in chief, that the defendant voluntarily, knowingly and intelligently waived his rights." *J.D.B. v. North Carolina,* — U.S. —, 131 S.Ct. 2394, 2401, 180 L.Ed.2d 310 (2011) (internal quotations omitted).

The inquiry has two distinct dimensions. First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that *Miranda* rights have been waived.

A determination of whether a juvenile knowingly waived his *Miranda* rights and made a voluntary confession is to be based on a consideration of the totality of the circumstances, including a consideration of the juvenile's age, experience, comprehension and the presence or absence of an interested adult.

*In re T.B.,* 11 A.3d 500, 505–506 (Pa.Super.2010) (quotations, citations, and emphasis omitted).

The juvenile court determined that Appellant was in custody and subject to interrogation, *see* N.T., 10/21/2011, at 26–27, 32; however, it opined that it was not "police

custody in such a manner that would trigger" *Miranda* warnings. Juvenile Court Opinion, 12/19/2012, at 5. Citing no authority, indeed acknowledging that there is no authority on point,[8, 9] the juvenile court explained its decision as follows.

> [T]he police drove the Appellant from his home to the police district and questioned [him] only after receiving permission from his father in an effort to assist them in their criminal investigation of certain crimes. There was no intention by the police to elicit incriminating information from the Appellant for the purpose of charging him with any crime. The Appellant, who was fed pizza at the police district, knew that there was never any prospect that he would be taken into custody. Rather, he knew at all times, as did his father, that he would be driven home once he provided all necessary information to aid the police in their investigation of crimes that he would not be charged with.
>
> The [juvenile c]ourt denied the motion because police were told, wrongly as it happens, that Appellant was nine years old and not chargeable with a crime. [*Miranda* warnings] would have served no purpose by their consideration. After his interview they took him home and gave him to his father.

*Id.* at 5–6. The juvenile court's on-the-record explanation offers additional insight into this analysis.

> The detective did not read him his rights because the detective knew the function of reading him his rights, and going through the process. And there's no way that the detective was going to tell him, if you don't want to talk with me or . . . legal counsel will be provided, because none of that stuff was going to happen for an eight-year old, and [*Miranda* ] is a process that you go through to protect people from criminal sanctions, as a result of the constitution.
>
> So, Detective Ortiz, did not owe him [*Miranda* warnings]. . . . [T]here's no reason, if you fully believe, if one fully believes, that a person cannot be prosecuted, there's no reason to . . . give that person [*Miranda* ] warnings.

> \*     \*     \*

> [U]nder the circumstances . . . I believe the detective was acting in good faith, and I believe that because I don't believe that Detective Ortiz would have taken the boy home, and given him back to his father, unless he believe[d] that he was talking to a child.
>
> I further believe that the material obtained by Detective Ortiz, as a result of his, for want of a better word, "interrogation" of the boy, was obtained in good faith for purposes of getting information as to the crimes themselves, and the others who participated in the crimes.
>
> I further believe that the father and others may very well have participated in the immigration fraud, and that's how we've come to the state that we are now.
>
> I don't believe that the father was telling Detective Ortiz the truth. I believe that he was in the process of deceiving him.

---

**8.** The juvenile court stated on the record: "I'm comfortable that this case is going to be one of the cases that makes laws, because I think this is a case of first impression for everyone. . . ." N.T., 10/21/2011, at 37.

**9.** The author of this Opinion vigorously disagrees with the Dissent's assertion that he "took to task" the juvenile court in this case. Disagreeing with another judge is not taking him to task. Furthermore, the author served with the Honorable A. Frank Reynolds on the Juvenile Court Judges Commission and has the utmost respect for him and his extensive knowledge of juvenile law.

I'm in the same situation as the first time I saw the boy, and I ordered that the doctor evaluate him, to determine his age.

N.T., 10/21/2011, at 34–35, 37–38.

The juvenile court's only response to Appellant's argument that, under the circumstances, he was incapable of giving "a knowing, voluntary and intentional statement" was to opine that children are "the ones who are most likely to give that kind of statement. It has been my experience that when I'm speaking to children, they can be naïve, but I think that children are more likely to tell the truth. . . ." *Id.* at 36.

As we noted above, the burden was on the Commonwealth to show, "as a prerequisite to the statement's admissibility in [its] case in chief, that [Appellant] voluntarily, knowingly and intelligently waived his rights." *J.D.B.*, 131 S.Ct. at 2401. Under the unique circumstances of this case, we are constrained to conclude that the juvenile court erred in focusing on the "fraud" perpetrated by Appellant's father and the good faith of the police officers, rather than whether Appellant was deprived of his constitutional rights.

Regardless of what the police thought or why they thought it, the fact of the matter is that Appellant had the right to remain silent rather than to incriminate himself. That Appellant's father provided the police with inaccurate information about Appellant's age did not waive or negate Appellant's constitutional rights. That the police had a good-faith belief that Appellant was incapable of incriminating himself does not alter the reality that Appellant was so capable.[10]

The circumstances under which Appellant gave the statements used against him are these. Appellant, suspected of committing burglaries, was taken by police to their headquarters, where, as the juvenile court found, "[u]nder no circumstances was he free to leave." N.T., 10/21/2011, at 26. Once there, Appellant was interrogated about the burglaries he was suspected of having committed. Having been affirmatively told that he would face no legal consequences no matter what he said, Appellant provided the police with all of the information needed to secure adjudications of delinquency.

Under these circumstances, and given that Appellant was a child, in third grade, with a stipulated IQ of 50, we hold that it was error for the juvenile court to conclude that the Commonwealth met its burden of proving that Appellant's statements were made voluntarily, knowingly, and intelligently. *See, e.g., In re T.B.*, 11 A.3d at 506–507 (Pa.Super.2010) ("In examining the totality of circumstances to determine the legal question of whether Appellant's *Miranda* waiver was knowing and voluntary, we conclude that Appellant's age, fifteen, combined with his intelligence level [ (IQ of 67) ], his lack of consultation with an interested adult immediately prior to the interrogation, and the fact that no

---

**10.** The Dissent opines that because the police believed that the incriminating statements they were eliciting from Appellant could not be used to charge him with a crime, he was not subject to an "interrogation" for *Miranda* purposes. This is merely a backdoor way of injecting the Fourth Amendment good faith exception into the analysis of *Miranda* violations. Such is unjustified given the distinctions between the rights at issue and the conduct sought to be deterred by the exclusionary rule. *See, e.g., People v. Smith*, 31 Cal. App.4th 1185, 1192–1193, 37 Cal.Rptr.2d 524 (Cal.App. 2 Dist.1995) (holding that because the Fourth Amendment exclusionary rule serves to deter police misconduct, while evidence obtained in violation of the Fifth Amendment is excluded on principles of due process and to preserve the integrity of the justice system, the good faith exception does not apply to confessions obtained in violation of *Miranda* ).

adult was present or informed of Appellant's rights before the police interviewed him all support the finding that his waiver was unintelligently and unknowingly entered.").

Accordingly, we reverse the October 21, 2011 order denying Appellant's motion to suppress and vacate the January 6, 2012 adjudications of delinquency and dispositional orders entered in cases 3613, 3615, 3616, and 3617. Because the burglary for which Appellant was adjudicated delinquent at case 3618 occurred after Appellant gave the statement at issue, and was thus not discussed in the statement, we do not disturb the dispositional order entered in that case.

Dispositional order entered at case 3618 affirmed. Dispositional orders and adjudications of delinquency entered at cases 3613, 3615, 3616, and 3617 vacated. October 21, 2011 order reversed. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

Judge ALLEN files a
Concurring/Dissenting Opinion.

## CONCURRING AND DISSENTING OPINION BY ALLEN, J.:

B.T., allegedly born November 30, 2002, cannot have it both ways. He cannot claim that he was only eight years old [1] when the police questioned him on July 1, 2011, thereby avoiding the juvenile court's jurisdiction, but then argue that he is entitled to the constitutional protections of *Miranda*, and suppression of the statements he made regarding a majority of the burglaries for which he was adjudicated delinquent.

I fully agree with the Majority decision to affirm the juvenile court's denial of B.T.'s motion to dismiss. I dissent, however, from the Majority's conclusion that B.T.'s statements on July 1, 2011 with regard to a majority of the burglaries should have been suppressed due to a violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

"When reviewing an order denying a motion to suppress evidence, we must determine whether the evidence of record supports the factual findings of the trial court." *Commonwealth v. El*, 933 A.2d 657, 660 (Pa.Super.2007). "In making this determination, this [C]ourt may only consider the Commonwealth's evidence and the defendant's evidence that remains uncontradicted." *Id.* "If the evidence supports the findings of the trial court, those findings bind us and we may reverse only if the suppression court drew erroneous legal conclusions from the evidence." *Id.*

Here, the juvenile court summarized its factual findings as follows:

On October 21, 2011, a hearing was held on [B.T.'s] Motion to Suppress. [B.T.] alleges that a statement and other incriminating data were taken from him amounting to confessions to several crimes, including burglary and conspiracy. The sequence of events in the interrogation and investigation is relevant and compelling:

Detective Orlando Ortiz, assigned to Southwest Detectives in Philadelphia, spoke to [B.T.] on July 1, 2011 at 4:40 p.m. at [B.T.'s] home. Detective Ortiz asked the boy's age and was told he was nine years old. With that, Detective Ortiz knew that he could not arrest [B.T.]. There was a series of robberies

---

1. There are instances in the record when B.T. is alleged to have been nine years old when questioned by police on July 1, 2011. N.T., 10/21/11, at 8–9. It does not matter, in our analysis, whether B.T. purported to be eight or nine when the police interviewed him. *See* 42 Pa.C.S.A. § 6302 (to be delinquent, a child must be ten years of age or older).

[sic] in which Ortiz believed [B.T.] was involved. [Detective Ortiz] wanted information as to the co-conspirators so he requested and got permission to take [B.T.] to the district to question him.

Juvenile Court Opinion, 12/20/12, at 3–4.

The juvenile court then cited the following exchange between the Commonwealth and Detective Ortiz:

Q: What did you say to his father?

A: We basically told his father—we asked his father [B.T.'s] age. At the time his dad told us that he was nine years old. So we knew we couldn't charge him with any burglaries, but we had suspicion that he might have committed several burglaries in the area, and that's what we were investigating.

So we wanted information on other co-defendants, or locations that he might possibly [have] committed burglaries at in the area. So we explained everything to his dad, that he wasn't going to be charged. We just basically wanted to interview him just to get information on all these burglaries that we were investigating.

Q: And what happened after you explained that to his father?

A: His dad gave us permission. His dad was very cooperative with us. He explained to us that he had some problems with [B.T.]. He was informed of—what we were doing. He had my partner's cell phone number and he gave us permission to—for [B.T.] to come with us at the time.

Q: Was [B.T.] handcuffed when you transported him to the district?

A: No, he was not.

Q: Where did he sit in the car?

A: He sat in the back of our—well, it's a police car, but it's a Ford [Taurus]. It's an unmarked Ford [Taurus].

Q: And what happened when you got back to the district?

A: We basically sat him down at our office. We fed him, we gave him pizza, and I interviewed him.

Q: And what happed after the interview?

A: After the interview we transported [B.T.] back home to his dad.

Juvenile Court Opinion, 12/20/12, at 4 (citing N.T., 10/21/11, at 8–9).

Approximately one month later, B.T. was caught committing a burglary, and the police obtained evidence that B.T. was over the age of ten. B.T. was therefore arrested for the latest burglary, as well as the additional burglaries he had confessed to in his July 1, 2011 police interview.

Based on the above facts, which are supported by my review of the record, the juvenile court listed the following reasons for denying B.T.'s motion to suppress:

First, the investigation by Detective Ortiz on July 1, 2011, was an appropriate exercise of police authority. The interrogation of [B.T.] was a reasonable action designed to acquire information on his co-conspirators.

Second, the Fourth Amendment and the case law, both State and Federal, place limitations on interrogation circumstances and techniques. These limitations come into play when law enforcement officials have narrowed their investigation down to a class of suspects who may not be questioned without *Miranda* warnings. [B.T.] contends that because he was not so warned, his statements should not be allowed at trial.

*Miranda* warnings are unquestionably required to be given once a person is placed under arrest. Such was clearly not the case here. Additionally, *Miranda* warnings are necessary when a person is subject to custodial interroga-

tion. In these instances, the individual is not free to leave and is typically the subject of the investigation.

In the instant case, [B.T.] was not in police custody in such a manner that would trigger *Miranda*. As stated above, the police drove [B.T.] from his home to the police district and questioned [him] only after receiving permission from his father in an effort to assist them in their criminal investigation of certain crimes. There was no intention by the police to elicit incriminating information from [B.T.] for the purpose of charging him with any crime. [B.T.], who was fed pizza at the police district, knew that there was never any prospect that he would be taken into custody. Rather, he knew at all times, as did his father, that he would be driven home once he provided all necessary information to aid the police in their investigation of crimes that he would not be charged with.

The [juvenile court] denied the motion because police were told, wrongly as it happens, that [B.T.] was nine years old and not chargeable with a crime. [A] *Miranda* warning would have served no purpose by their consideration [sic]. After [B.T.'s] interview they took him home and gave him to his father.

Consequently, this Court did not err in denying [B.T.'s] motion to suppress. Juvenile Court Opinion, 12/20/12, at 5–6. My review of the record supports the learned juvenile court's legal conclusions.

Pursuant to the Juvenile Act, a "delinquent child" is defined as a "child ten years of age or older whom the court has found to have committed a delinquent act and is in need of treatment, supervision, or rehabilitation." 42 Pa.C.S.A. § 6302. Moreover, in delinquency cases under the Juvenile Act, a child charged with delinquency enjoys the right to counsel, as well as other basic rights, including due process and the right against self-incrimination. *See generally*, 42 Pa.C.S.A. §§ 6337–6338; *Commonwealth v. Brown*, 26 A.3d 485 (Pa.Super.2011). A child charged with a delinquent act also enjoys the protections afforded by *Miranda*. *See e.g., In Interest of Mellott*, 327 Pa.Super. 396, 476 A.2d 11 (1984). "The law is clear that *Miranda* is not implicated unless the individual is in custody *and* subject to interrogation." *Commonwealth v. Umstead*, 916 A.2d 1146, 1152 (Pa.Super.2007). The absence of either factor vitiates the need for *Miranda* warnings. *See id.*

Unlike the Majority, my review of the record leads to the conclusion that when Detective Ortiz interacted with B.T. on July 1, 2011, B.T. was neither in "custody" nor underwent "interrogation" for *Miranda* purposes.

Our Supreme Court has recently summarized:

> We have held a person is in custody for *Miranda* purposes only when he is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation. The standard for determining whether an encounter with the police is deemed custodial is an objective one based on a totality of the circumstances with due consideration given to the reasonable impression conveyed to the person interrogated.

*Commonwealth v. Johnson*, 615 Pa. 354, 42 A.3d 1017, 1028 (2012) (citations omitted). This Court has further explained:

> Indeed, police detentions only become "custodial" when under the totality of the circumstances the conditions and/or duration of the detention become so co-

ercive as to constitute the functional equivalent of formal arrest.

Among the factors the court utilizes in determining, under the totality of the circumstances, whether the detention became so coercive as to constitute the functional equivalent of a formal arrest are: the basis for the detention; the duration; the location; whether the suspect was transferred against his will, how far, and why; whether restraints were used; the show, threat or use of force; and the methods of investigation used to confirm or dispel suspicions.

*Commonwealth v. Busch,* 713 A.2d 97, 100–01 (Pa.Super.1998) (citations omitted).

A consideration of the totality of the circumstances presented by this case clearly establishes that B.T. was not in "custody" for *Miranda* purposes. Because B.T.'s father declined to accompany his allegedly eight-year-old son, B.T. clearly was in the "custody" and the "care" of the detectives who fed him pizza, spoke with him for approximately one hour, and then took him home. The juvenile court concluded as much in the following statement made during the suppression hearing: "Under no circumstances was [B.T.] free to leave. The detective believed that he was eight years old and the detective had an obligation under any circumstance, to return him to his parents." N.T., 10/21/11, at 26. The Majority takes this statement out of context to determine that the record supports its conclusion that the juvenile court believed that B.T. was in custody for *Miranda* purposes. *See* Majority, at 438. In addition, had his father accompanied B.T. to the police station, there is no question that both the purported eight-or-nine year-old B.T. and his father would have been free to leave at any time.

"Interrogation" for *Miranda* purposes, "is defined as police conduct calculated to, expected to, or likely to evoke admission."

*Umstead,* 916 A.2d at 1152. By definition, given his asserted age, B.T. could not be charged with an act of delinquency under the Juvenile Act. *See* 42 Pa.C.S.A. § 6302. It therefore follows that B.T. could not be subject to "interrogation" for *Miranda* purposes. My review of the record supports the juvenile court's conclusion that, although B.T. was interviewed by the detectives, there "was no intention by the police to elicit incriminating statements for the purpose of charging him with any crime," and that B.T. "knew at all times, as did his father, that he would be driven home once he provided all necessary information to aid the police in their investigation of crimes that he would not be charged with." Juvenile Court Opinion, 12/20/12, at 5. Indeed, given his purported age, B.T. could not be charged with any act of delinquency.

In sum, because B.T. was neither in "custody" or subject to "interrogation" for *Miranda* purposes, the learned juvenile court properly denied his suppression motion. Considering the totality of the circumstances, B.T., with his father's permission, voluntarily accompanied the police to be interviewed and provide information regarding a rash of burglaries. The fact that Detective Ortiz subsequently learned information that permitted B.T.'s arrest for the burglaries does not retroactively convert B.T.'s interaction with the police on July 1, 2011 into a "custodial interrogation." *See Umstead,* 916 A.2d at 1152 (holding that the defendant was not subject to "custodial interrogation" when a corrections officer first questioned him about a prison assault, even though he later confessed to the crime).

At the suppression hearing, B.T.'s counsel presented a two-prong challenge to the statements given by B.T. on July 1, 2011. Counsel first challenged the admissibility of the statements given Detective Ortiz's

alleged violation of *Miranda.* Secondly, counsel asserted that, even if *Miranda* warnings were not required, B.T.'s statements were not voluntary, given B.T.'s age, his immigrant status, and education level. *See* N.T., 10/21/11, at 5.[2] In reaching its decision to reverse the juvenile court, the Majority conflates these two separate arguments. The Majority confuses the necessity of *Miranda* warnings in the first instance, with the question of whether B.T. could validly waive them. Without citation to the record, the Majority states that B.T. has "a stipulated IQ of 50." *Majority,* at 438. The Majority then cites this Court's recent decision in *In re T.B.,* 11 A.3d 500 (Pa.Super.2010) to "hold that it was error for the juvenile court to conclude that the Commonwealth met its burden of proving that Appellant's statements were made voluntarily, knowingly, and intelligently." *Majority,* at 438.

The Majority's reliance on *T.B.* is inapt. *T.B.* involved the question of whether a fifteen-year-old offender, with an IQ of 67, could, without the input of an interested adult, validly waive his *Miranda* rights. *T.B.,* 11 A.3d at 506–07. Unlike the facts of the instant case, the police in *T.B.* knew the offender's true age, and recognized the necessity of *Miranda* warnings. Additionally, the Majority makes the bare assertion that "[r]egardless of what the police thought or why they thought it, the fact of the matter is that [B.T.] had the right to remain silent rather than to incriminate himself." *Majority,* at 438. In response to a similar argument by defense counsel that even children under the age of ten

have constitutional rights, the juvenile court responded:

> **THE COURT:** The detective did not read [B.T.] his rights because the detective knew the function of reading him his rights, and going through the process. And there's no way that the detective was going to tell him, if you don't want to talk with me or I'll get you—legal counsel will be provided, because none of that stuff was going to happen for an eight-year old, and *Miranda* is a process that you go through to protect people from the criminal sanctions, as a result of the constitution.
>
> So, Detective Ortiz, did not owe him *Miranda,* it's not the [constitutional] right when you're [not] ten years old ... And there's no reason, if you fully believe that a person cannot be prosecuted, there's absolutely no reason to lead that person or to give that person *Miranda* warnings.

N.T., 10/21/11, at 34–35.

While acknowledging the uniqueness of the fact pattern presented, the Majority summarily reverses the learned juvenile court. Taking the juvenile court to task for reaching its conclusions without citation to authority, *see Majority* at 436–37, the Majority, with little or no analysis, reverses the juvenile court due largely to its belief that the juvenile court mistakenly focused on the immigration fraud purportedly perpetrated by B.T.'s father. *See id.,* at 437–38. The question of whether such fraud was perpetrated in this case is not properly before us. Nevertheless, in reversing the juvenile court, the Majority

---

**2.** My review of the record supports the Commonwealth's claim that B.T. waived his second argument because it was neither raised in B.T.'s statement of issues or in B.T.'s Pa. R.A.P. 1925(b) statement. *See* Commonwealth's Brief at 14, n.4. The juvenile court

did not address this issue in its Pa.R.A.P. 1925(a) opinion. Rather, the Majority finds error based upon a statement made by the juvenile court at the suppression hearing. Majority at 437–38.

permits B.T. to benefit from any such deception.

Finally, I must take issue with the Majority's characterization of my disagreement as a "back door way of injecting the Fourth Amendment good faith exception into the analysis of *Miranda* violations. Such is unjustified given the distinction between the rights at issue and the conduct sought to be deterred by the exclusionary rule." *Majority*, at 438 n. 10 (citing *People v. Smith*, 31 Cal.App.4th 1185, 1192–93, 37 Cal.Rptr.2d 524 (Cal.App. 2 Dist.1995)).

I am fully aware of the well settled principle that the exclusionary rule applies to dissuade unlawful police conduct. *See Commonwealth v. Williams*, 2 A.3d 611, 619–21 (Pa.Super.2010) (*en banc*) (providing a thorough discussion of the purposes of the exclusionary rule). I am also aware that, unlike its federal counterpart, under the Pennsylvania constitution, there is no good faith exception to the warrant requirement. *See generally, Commonwealth v. Antoszyk*, 614 Pa. 539, 38 A.3d 816 (2012). Finally, longstanding Pennsylvania precedent has refused to extend a "good faith" exception to the *Miranda* requirements. *See e.g., Commonwealth v. Ramos*, 367 Pa.Super. 84, 532 A.2d 465 (1987).

Here, none of these principles is germane to the suppression issue presented. Rather, as noted above, before a person is entitled to *Miranda* warnings he or she must be in custody *and* subject to interrogation. *Umstead, supra.* My review of the record amply supports the learned juvenile court's conclusion that B.T. was not in custody on July 1, 2011. Without custody, there can be no "custodial" interrogation. Thus, B.T.'s statements were not subject to suppression based upon a *Miranda* violation.

For all of the above reasons, I would affirm B.T.'s dispositional orders in each case.