J-S82039-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| IN RE: J.C., JUVENILE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: J.C., JUVENILE | : | No. 2213 EDA 2018 |

Appeal from the Dispositional Order Entered May 31, 2018
in the Court of Common Pleas of Lehigh County
Juvenile Division at No(s): CP-39-JV-0001142-2017

BEFORE:    LAZARUS, J., OLSON, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:    **FILED MARCH 12, 2019**

J.C. (Appellant) appeals from the dispositional order entered on May 31, 2018, following his adjudication of delinquency for burglary, simple assault, and possession of an instrument of crime.  Specifically, Appellant challenges the denial of his pre-trial motion to suppress his statement and DNA sample.  Upon review, we affirm.

On April 7, 2017, shortly after midnight, South Whitehall Township detectives were called to a home for a reported burglary.  Upon arrival, the victim notified detectives that he had cut the burglar with a machete, causing the burglar to flee.  Appellant was apprehended nearby, exhibiting injuries consistent with being cut by a machete.  Appellant was transported to the hospital.  N.T., 2/8/2018, at 11-14, 47.

After processing the scene of the burglary, Detectives Chad Moyer and Timothy Shoudt proceeded to the hospital at approximately 4:00 a.m. to question Appellant.  Hospital staff notified the detectives that Appellant was

_____

*Retired Senior Judge assigned to the Superior Court.

recovering from surgery. The detectives, who were in plain clothes, entered Appellant's hospital room and identified themselves as police to Appellant, but did not question him at that time. Because Appellant was 17 years old, Detective Shoudt called Appellant's mother and requested her presence at the hospital so the detectives could interview Appellant about an incident. The individual who answered the phone identified herself as Appellant's mother and stated she would come to the hospital.[1] *Id.* at 14-18, 25-26, 40-41, 47.

Approximately 1½ hours after Detective Shoudt called Appellant's mother, hospital staff called her to notify her that Appellant was ready to be discharged and she needed to pick him up. Appellant's mother responded that she would be there in 20 to 30 minutes. After waiting approximately one hour, the detectives gave Appellant a hospital phone to call his mother to ask her to come to the hospital so the detectives could question him. Again, the detectives waited for her to arrive. Finally, at approximately 8:00 a.m., after Appellant's mother still failed to appear, the detectives decided to

_____

[1] At Appellant's suppression hearing, Appellant's mother testified that she never spoke to police on the phone. She testified that she received a call from a nurse that Appellant was ready to be picked up and that two detectives wanted to talk to him, and a second call from Appellant during which he told her that detectives had asked him questions. When Appellant's mother finally arrived at the hospital, no detectives were present. N.T., 2/8/2018, at 70-72, 78.

speak with Appellant in his hospital room.  *Id.* at 18-20, 32-33, 42-43, 51-52, 54.

Appellant's hospital room was separated from the emergency room area by a curtain.  The detectives again identified themselves as police, and Detective Shoudt read Appellant his rights pursuant to **Miranda v. Arizona**, 384 U.S. 436 (1966).  Appellant provided verbal confirmation of his understanding and waiver of those rights.  The detectives then asked Appellant how he was injured.  He stated that he was injured by a robber, and the detectives told him that they did not believe his story, and they instead believed he was injured while attempting to burglarize a home.  The detectives also asked Appellant for his DNA sample using a buccal swab to compare with blood recovered at the scene, to which Appellant consented. The entire conversation lasted approximately 30 minutes, during which nurses entered and exited Appellant's room.  Appellant was still at the hospital awaiting the arrival of his mother when the detectives left.  N.T., 2/8/2018, at 20-24, 30, 43-46, 52-54.

Several months later, Appellant was charged with burglary, simple assault, terroristic threats,[2] and possession of an instrument of crime.  On January 24, 2018, Appellant filed a motion to suppress, challenging the voluntary, intelligent, and knowing nature of his **Miranda** waiver and

---

[2] This charge was subsequently withdrawn.

consent to provide a DNA sample. A suppression hearing was held on February 8, 2018, during which the aforementioned facts were developed.

Regarding Appellant's waiver of his *Miranda* rights, both detectives testified that Appellant appeared alert, responsive, and understanding, and did not appear to be under the influence of drugs or alcohol.[3] N.T., 2/8/2018, at 20, 25-27, 44-45, 49-50. On the other hand, Appellant's probation officer testified that Appellant is easily confused, struggles with comprehension, has only completed ninth grade, suffers from several psychological disorders as well as autism, does not take his prescribed medications, and is in a special probation program for juveniles with significant mental health issues. *Id.* at 60, 62, 64-65. The parties later stipulated to Appellant's IQ being 72. *See* Allentown School District Reevaluation Report, 3/23/2017, at 3; Stipulation, 3/5/2018.

On May 23, 2018, the juvenile court denied Appellant's motion by order and opinion. On May 31, 2018, the juvenile court adjudicated

---

[3] No evidence was presented during Appellant's suppression hearing as to the type of surgery he underwent, whether local or general anesthesia was used, or whether Appellant was on any pain medications following surgery. The only indication of what procedure might have been done is a brief reference to stitches during the court's questioning of Appellant's mother. N.T., 2/8/2018, at 79.

Appellant delinquent and committed him to a residential youth facility to undergo treatment. Appellant timely filed a notice of appeal.[4]

We begin with our standard of review of a court's denial of a motion to suppress.

> An appellate court may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the suppression court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. It is also well settled that the appellate court is not bound by the suppression court's conclusions of law.

*In re B.T.*, 82 A.3d 431, 435 (Pa. Super. 2013) (citation omitted).

Preliminarily, the juvenile court found that Appellant was not in custody, and therefore the *Miranda* safeguards did not apply. Juvenile Court Opinion, 5/23/2018, at 3. "A person is deemed to be in custody for *Miranda* purposes when [he] is physically denied of his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." *In re B.T.*, 82 A.3d at 436 (citation omitted).

> The several factors the court considers to determine whether a person is in custody for *Miranda* purposes under the totality of the circumstances of a case include: the basis for the detention; its duration; its location; whether the suspect was transferred against his will, how far, and why; whether restraints were used;

---

[4] Appellant complied with Pa.R.A.P. 1925(b). In lieu of a Pa.R.A.P. 1925(a) opinion, the trial court referred this Court to its May 23, 2018 opinion, which addresses Appellant's issues raised on appeal. Order, 8/21/2018.

whether there was a demonstration, threat or use of force; and the method of investigation used to confirm or dispel police suspicions.

*In re K.Q.M.*, 873 A.2d 752, 755 (Pa. Super. 2005) (citation omitted).

In this case, Appellant was transported to the hospital and underwent surgery of some kind for his injuries. Appellant was ready to be released following recovery, but the **hospital** would not release him until a guardian arrived. The hospital attempted to contact Appellant's mother so that Appellant could be discharged. The detectives also attempted to contact Appellant's mother prior to questioning him, but after four hours decided to interview Appellant in his hospital room without his mother present.[5] Appellant's mother arrived at some point thereafter, and the hospital discharged Appellant. Appellant's hospital room did not have a door, but was set off from the remainder of the emergency room area by a curtain. Prior to the 30-minute interview, the detectives, who were in plain clothes, identified themselves as police a second time and provided Appellant with verbal *Miranda* warnings. During the interview, nurses entered and exited the room, and the detectives told Appellant that they believed he was the suspect in the burglary they were investigating.

---

[5] We note that the presence of an interested adult is not required prior to questioning a juvenile, but is one factor in determining the voluntariness of a juvenile's waiver of his or her *Miranda* rights, and thus police generally prefer to have an interested person present. *See In re T.B.*, 11 A.3d 500, 507 (Pa. Super. 2010).

We find **Commonwealth v. Johnson**, 727 A.2d 1089 (Pa. 1999), instructive. In **Johnson**, our Supreme Court concluded that Johnson was not in custody because

> [Johnson's] inability to leave was not the result of any action of restraint by the police, but was due to his physical condition at the time. Although the officers displayed their badges, they were not in uniform and conducted the interview with the hospital door open and while another patient was in the room with [Johnson]. There was no suggestion by [Johnson] that he wanted police questioning to cease, or that he objected to the questioning.

**Id.** at 1100.

Like Johnson, Appellant was not restrained by the police, but by the hospital. There was no evidence presented that Appellant wished to leave the hospital; rather, the only evidence regarding Appellant's restricted movement was that the hospital would not discharge him without a parent. Also as in **Johnson**, Appellant's room was open to other individuals during the interview, and there was no indication that Appellant did not wish to speak to the detectives. Our review of the record reveals that the detectives did not employ any force or restraints, and in fact gave Appellant the explicit opportunity to end any questioning by providing him with **Miranda** warnings, even though such warnings were not required. Based on the totality of the circumstances, we agree with the juvenile court that Appellant was not in custody at the time he was questioned by police. **Cf. In the Interest of: J.N.W.**, 197 A.3d 274, 282-83 (Pa. Super. 2018) (concluding

J.N.W. was in custody at hospital when she expressed that she wanted to leave but was told by hospital staff that she was not allowed to, and she was reluctant to answer coroner's criminal investigation questions). Accordingly, because Appellant was not in custody, there was no need for him to waive his **Miranda** rights, and we need not determine whether Appellant's waiver was knowingly and intelligently given.

We now turn to Appellant's claim that his consent to the DNA sample was not knowing, intelligent, and voluntary. Appellant's Brief at 18.

"Although age is one element to acknowledge in ascertaining whether consent was given willingly, minority status alone does not prevent one from giving consent." **In Interest of Jermaine**, 582 A.2d 1058, 1064 (Pa. Super. 1990) (citation and quotation marks omitted).

> In connection with the inquiry into the voluntariness of a consent given pursuant to a lawful encounter, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne— under the totality of the circumstances. While knowledge of the right to refuse to consent to the search is a factor to be taken into account, the Commonwealth is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. Additionally, although the inquiry is an objective one, the maturity, sophistication and mental or emotional state of the defendant (including age, intelligence and capacity to exercise free will), are to be taken into account.

**Commonwealth v. Powell**, 994 A.2d 1096, 1101–02 (Pa. Super. 2010) (citation omitted).

Appellant contends that his consent to the DNA sample followed his purported **Miranda** violation, and therefore should have been suppressed as fruit of the poisonous tree. Appellant's Brief at 19. As discussed *supra*, there was no **Miranda** violation. As such, there was no poisonous tree to produce any such fruit.

Appellant also argues that his consent was involuntary, unknowing, and unintelligent "under the same totality of the circumstance[]s as" his **Miranda** claim. Appellant's Brief at 18-19. In denying Appellant's motion to suppress his DNA sample, the juvenile court found Appellant's consent was not the product of coercion and there was no indication that the detectives knew or should have known of Appellant's mental disabilities. Juvenile Court Opinion, 5/23/2018, at 4-5.

Our review of the record reveals that even though Appellant had undergone some type of surgery, he was ready to be discharged by the hospital, and was alert and appropriately responsive to the detectives' questions. The detectives candidly told 17-year-old Appellant that they wanted to compare his DNA sample to blood recovered at the scene of the burglary and on the machete used to cut the burglar in order either to clear Appellant or make him their prime suspect. They further explained the process for collecting his DNA sample by buccal swab. Following that explanation, Appellant provided verbal consent to submit a DNA sample.

While Appellant's IQ may have been less than the detectives realized, there was no evidence that Appellant did not appear to understand his conversation with the detectives or that the detectives coerced Appellant in any manner. Rather, the evidence of record indicates that Appellant provided coherent answers and his vocabulary and general communication were consistent with those of an adult. *See* N.T., 2/8/2018, at 44-45. Further, there is no evidence of record that would have suggested to the detectives that at the time they spoke with Appellant he suffered from a low IQ or mental disabilities. As such, the juvenile court's analysis is supported by the record, and we agree with the court that the totality of the circumstances demonstrates that Appellant voluntarily consented to provide the DNA sample. *See Powell, supra*.

Accordingly, we find no error in the juvenile court's denial of Appellant's motion to suppress.

Dispositional order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 3/12/19

- 10 -