J-S85007-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN THE INTEREST OF: S.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: S.R., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 290 WDA 2017 |

Appeal from the Order Dated December 15, 2016
In the Court of Common Pleas of Allegheny County Juvenile Division at
No(s):  CP-02-JV-0001638-2016

BEFORE:  BOWES, J., PANELLA, J., and STABILE, J.

MEMORANDUM BY BOWES, J.:                FILED MAY 14, 2018

S.R. appeals from the dispositional order entered on December 15, 2016, following her adjudication of delinquency for indecent assault.  We affirm.

The juvenile court offered the following summary of the relevant facts.

> The case initiated when a counselor filed a childline report on April 28, 2016, reporting that the victim, H.R., had alleged that a child from her neighborhood had touched her inappropriately. As a result of that childline, the case was referred to . . . the Allegheny County Police Department, [which] began investigating H.R.'s claims.  The victim underwent a forensic interview on May 18, 2016, at Mercy Hospital.  In this interview, the victim alleged that she was playing outside with [Appellant] in their neighborhood.  She reported to playing a game called "ding dong ditch."[1]  During one of these incidents, the victim reported that they were hiding behind [Appellant's] house when [Appellant] touched her "privates" under her underwear.  She also reported that [Appellant] asked her to touch [Appellant's] "privates" during this incident.  . . .  The victim reported that she told her mother and her counselor the next day about the incident.  This report and subsequent childline led to the filing of the instant delinquency petition.

_____

[1] A game in which children ring doorbells and run from the homes before anyone can answer the door.

In [its] case in chief, [the Commonwealth] called the victim, H.R., as [its] first witness. The following is a summary of her testimony. H.R. was seven years old at the time of her testimony and six when the incident occurred. H.R. testified that she had asked her mother for permission to play with [Appellant] before her mom went to bible study. Her mother agreed and H.R. went to [Appellant's] neighborhood to play. The victim testified that the two were playing ding, dong, ditch. At some point during the game, the victim reported that [Appellant] had thrown a rock at one of the home's windows. She reported that the two ran behind [Appellant's] house after they saw a police car. After some hesitation, H.R. testified that [Appellant] had touched her privates on the day in question. H.R. also testified that [Appellant] touched her under her underwear and that it was skin on skin. She reported that she continued to play with [Appellant] after this incident occurred. At some point during this time, she also started playing with [Appellant's] sister, A.R. Shortly thereafter, [Appellant] and the victim were playing in an adjacent yard when she alleged that [Appellant] again touched her vagina skin to skin. The victim then testified that [Appellant] asked her to touch [Appellant's] private parts . . . .

The next day, the victim reported telling her mother and a counselor about the incidents that had occurred the night before with [Appellant]. During cross-examination, the child reported to playing with [Appellant] from 7:00[ p.m.] to 10:00[ p.m.] on a Wednesday. She remembered that it was warm because she was wearing green shorts and a short-sleeved shirt. She also said that [Appellant] had used one hand and that she put it underneath each layer of her clothing until she reached her bare skin under her underwear. The victim revealed that she had previously been "touched" by a family friend and her grandfather. The victim demonstrated knowledge about the nature of inappropriate touching. She was able to articulate the difference between being touched and being touched "inappropriately." [The Commonwealth] asked that the forensic interview DVD be admitted into evidence and viewed by the court. There was no objection to this request from defense counsel. The court watched the interview and it was admitted into evidence.

During her case in chief, [Appellant's counsel] called [Appellant's] eleven-year-old sister, A.R. She testified that she was only a few feet away from Appellant and the victim while they were playing on that day. She testified that she had not wanted to play ding, dong, ditch but instead wanted to talk to her neighbor and draw with chalk. She testified that she was drawing with the chalk for about an hour and that she observed [Appellant] and victim knocking on a door and then hiding near a bush on the side of the house. She reported having her eyes on the two for the entire time that she was outside talking to the neighbor and drawing with chalk. A.R. also testified that she observed [Appellant] and the victim during the alleged rock throwing incident. She testified that one of the girls threw a rock at the window and then the police arrived. She reported that she and [Appellant] went into their home while her mother talked to the police. She testified that they went to bed after that and did not go back outside. A.R. also reported that she had talked to [Appellant] before coming into court so that she could remember things right and get her "story straight." A.R. had never reported this information to the police or anyone else in this case.

[Appellant's counsel] also called [Appellant] during her case in chief. [Appellant] testified that the girls had been playing ding dong ditch and that they had been hiding behind a bush near the home. She reported that they hid behind the bush a number of times while playing the game. [Appellant] testified that they threw rocks up onto the porch of one of those homes. She reported that the resident opened the door and one of the rocks hit the door. The police came shortly after. After some discussion with the police, she reported that she remained in the house with her father and that her sister and mother left to see a movie.

Juvenile Court Opinion, 5/22/17, at 3-6 (footnote, unnecessary capitalization, and some internal quotation marks omitted).

In the subsequent delinquency petition, Appellant, who was twelve years old at the time of the incident, was charged with conduct constituting aggravated indecent assault. The Commonwealth later amended the petition to include indecent assault. Following a hearing, the juvenile court concluded

that the Commonwealth proved that Appellant committed acts of indecent assault, and adjudicated Appellant dependent by order of December 15, 2016. Having also determined that Appellant was in need of treatment, supervision, or rehabilitation, the juvenile court placed Appellant on probation until further order of court, directed that she participate in counseling, and ordered that she pay standard court costs.

Appellant filed a post-dispositional motion in which she contended that the adjudication was against the weight of the evidence. The juvenile court denied the motion without a hearing. Appellant timely filed a notice of appeal, and both Appellant and the juvenile court complied with Pa.R.A.P. 1925. Appellant presents the following questions for this Court's consideration.

> I. Is the adjudication of delinquency not supported by sufficient evidence in that the Commonwealth failed to prove that any indecent contact that occurred was done without [H.R.'s] consent and/or was done with the intent of arousing sexual desire?
>
> II. Is the disposition in this case improper as the length of [Appellant's] probation is indefinite and the exact costs that [she] is required to pay are not included in the Order, and neither is an inquiry into [Appellant's] ability to pay?

Appellant's brief at 8.

We begin with our standard of review of dispositional orders in juvenile proceedings. The Juvenile Act grants broad discretion to juvenile courts in determining appropriate dispositions. In re C.A.G., 89 A.3d 704, 709 (Pa.Super. 2014). Indeed, the Superior Court will not disturb the lower court's

- 4 -

disposition absent a manifest abuse of discretion. In the Interest of J.D., 798 A.2d 210, 213 (Pa.Super. 2002).

Where an appellant challenges the sufficiency of the evidence to support the adjudication the following principles are applicable.

> When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth.

> In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

> The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth.

In re V.C., 66 A.3d 341, 348–49 (Pa.Super. 2013) (citation and quotation marks omitted).

"A person is guilty of indecent assault if the person has indecent contact with the complainant[ or] causes the complainant to have indecent contact with the person . . . and: (1) the person does so without the complainant's consent[.]" 18 Pa.C.S. § 3126(a)(1). Indecent contact is defined as "Any

- 5 -

touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S. § 3101.

Appellant claims that the Commonwealth failed to prove beyond a reasonable doubt either that Appellant "ever touched H.R. inappropriately" or that any touching was done to satisfy Appellant's sexual desire. Appellant's brief at 17. Our review of the evidence does not support Appellant's contentions.

H.R. testified that she and Appellant were playing outside on a warm Wednesday evening. N.T., 12/15/16, at 8, 14. On two occasions, while hiding from neighbors whose doorbells they had rung, Appellant reached under H.R.'s shorts and underwear, and used her hand and fingers to touch the part of H.R.'s body that she uses "to go to the bathroom," specifically "to pee." Id. at 18-21, 39. Additionally, Appellant requested that H.R. touch Appellant's "private part," i.e., the part she uses to pee. Id. at 22.

This Court has repeatedly affirmed convictions for indecent assault based on similar evidence. For example, in Commonwealth v. McClintic, 851 A.2d 214, 216 (Pa.Super. 2004), rev'd on other grounds, 909 A.2d 1241 (Pa. 2006), McClintic likewise argued that the evidence failed to show that the touching at issue, the grasping of the victim's breast, was for the purpose of sexual arousal rather than "an act of physical violence and intimidation." We disagreed, explaining as follows.

> Although the evidence indicates that [the defendant] intended to intimidate his victim, and initially was successful in

doing so, that fact did not prevent the jury from concluding that the manner in which he accomplished his intimidation indeed had a sexual component. [McClintic] surprised the sleeping victim in her bedroom. He sat close to her as she lay in her bed in the middle of the night. After getting the money he sought, he reached out, grabbed her breast and pinched it forcefully. The defense argued that the circumstances surrounding the touching established that it was not sexually motivated, but the jury was free to determine [McClintic's] intent based on the circumstances presented. Because those circumstances support the jury's ultimate decision, the evidence was sufficient to establish the crime and [McClintic] is not entitled to relief.

Id. at 216. See also Commonwealth v. Richter, 676 A.2d 1232, 1236 (Pa.Super. 1996) (holding evidence was sufficient to sustain indecent assault conviction where "Richter 'put his hands under [the complainant's] shirt and fondled her breasts' against her wishes"); In Interest of J.R., 648 A.2d 28, 34 (Pa.Super. 1994) (rejecting J.R.'s argument that the evidence was insufficient to show that there was any sexual touching for the purpose of arousing sexual desire by stating "it does not strain the very limits of credulity to suggest that, when J.R. removed A.B.'s clothing, lifted her up, and licked her vaginal area, his conduct fell within the purview of the indecent assault statute").

In asserting that the evidence was insufficient, Appellant largely attacks H.R.'s credibility, making arguments more appropriate to a claim that the adjudication is against the weight of the evidence. Appellant maintains that H.R.'s testimony is so riddled with "'I don't remember's and other inconsistencies" as to make the adjudication "the product of conjecture and

surmise." Appellant's brief at 17. The juvenile court had a very different assessment:

> There was no evidence that [H.R.'s] testimony had been tainted, either by another party or by prior experiences of sexual abuse. [H.R.] was articulate and was able to explain the difference between the truth and a lie. Although [H.R.] was able to testify about more specific details at trial [than she offered during the forensic interview], the court attributed that to the different questions that were asked by the Assistant District Attorney versus in the forensic interview. Additionally, [H.R.] reported the incident almost immediately after it occurred. Her recollection of the incident to the counselor, the forensic interviewer, and at trial was substantially similar. This court finds that any inconsistencies were minor and were attributable to [H.R.'s] age at the time of this incident and at trial.

Juvenile Court Opinion, 5/22/17, at 8 (unnecessary capitalization omitted).

The juvenile court was entitled to believe H.R.'s allegations, and its factual findings are supported by the record. Accordingly, they will not be disturbed by this Court. See In re B.T., 82 A.3d 431, 434 (Pa.Super. 2013) ("[C]redibility determinations in juvenile proceedings are within the exclusive province of the hearing judge."); In re A.D., 771 A.2d 45, 53 (Pa.Super. 2001) ("The factual finding . . . was based upon a credibility determination and we, as an appellate court, will not substitute our judgment for that of the fact finder.").

Having concluded that the adjudication was based upon sufficient evidence, we turn to Appellant's objections to the juvenile court's disposition. We initially observe that the alternatives for disposition of a delinquent child are statutorily prescribed as follows, in relevant part.

(a) General rule.--If the child is found to be a delinquent child the court may make any of the following orders of disposition determined to be consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation and welfare, which disposition shall, as appropriate to the individual circumstances of the child's case, provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable the child to become a responsible and productive member of the community:

. . . .

(2) Placing the child on probation under supervision of the probation officer of the court . . . under conditions and limitations the court prescribes.

. . . .

(5) Ordering payment by the child of reasonable amounts of money as fines, costs, fees or restitution as deemed appropriate as part of the plan of rehabilitation considering the nature of the acts committed and the earning capacity of the child. . . .

42 Pa.C.S. § 6352(a)(2), (5).

Appellant first attacks the juvenile court's imposition of an indefinite term of probation. In doing so, Appellant makes many of the arguments this Court rejected in In re S.A.S., 839 A.2d 1106, 1106 (Pa.Super. 2003), a case Appellant argues was wrongly decided. Appellant's brief at 25. Specifically, Appellant suggests that an indefinite term of probation should be illegal for a juvenile, as it would be for an adult, and that a definite term no longer than the maximum available for a convicted adult is required. Id. at 24-25. Appellant also contends that a disposition of probation until further order of

court is fundamentally unfair, and thus a violation of due process. Id. at 21-24.

In In re S.A.S., the juvenile was adjudicated delinquent at age 15 for possession of a small amount of marijuana. Like Appellant, S.A.S. was placed on probation "until further order of court." S.A.S. claimed that his disposition was illegal because it exceeded the maximum penalty available under the crimes code for the offense. In re S.A.S., supra at 1107. This Court rejected S.A.S.'s challenge as follows.

> [W]e agree with [S.A.S.] that a juvenile's term of commitment may not exceed four years or the maximum term of imprisonment he could have received if convicted as an adult. We also agree that under the sentencing code for adult offenders, a term of probation may not exceed the possible maximum term of imprisonment. However, juvenile proceedings are not criminal proceedings. The Juvenile Act vests the court with authority to set a term of probation under conditions and limitations the court prescribes, so long as the disposition is consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation, and welfare. The probation limitations set forth in the crimes code are simply inapposite to the Juvenile Act; the two statutes encompass independently different systems with different purposes and rules. In contrast to the general adult sentencing code, the Juvenile Act empowers juvenile courts with wide latitude to render probationary terms that are appropriate to the individual circumstances of the child's case.
>
> We hold that the juvenile court had the authority under the Juvenile Act to impose upon [S.A.S.] a period of probation that exceeded the maximum possible term of incarceration for the particular offense at issue and [S.A.S.'s] disposition is not illegal. Nevertheless, [S.A.S.'s] term of probation is still limited by the jurisdictional constraints of the Juvenile Act. Moreover, given the quasi-open nature of [S.A.S.'s] probation, [S.A.S.] may choose to petition the Juvenile Court for relief at the earliest appropriate time. Accordingly, we affirm [S.A.S.'s] dispositional order.

Id. at 1109.

Thus, based upon controlling precedent, the statutory maximum sentence for an adult convicted of indecent assault has no bearing on the validity of Appellant's disposition. Appellant's arguments to the contrary, and her disapproval of In re S.A.S., entitle her to no relief.

Further, Appellant has not convinced us that her disposition constitutes a violation of due process. Appellant's probation is subject to specific terms. Adjudicatory/Dispositional Order, 12/15/16, at 2 (providing Appellant is placed on probation until further order of court, is subject to the rules and regulations of the probation office, must have no contact with the victim, shall participate in the SSU/SAFE community-based program, and must report for fingerprinting, photographs, and provision of a DNA sample). The juvenile court will consider the propriety of continued supervision at least every six months at dispositional review hearings, and Appellant herself may at any time move for clarification, modification, or termination of the terms of her probation. See Pa.R.J.C.P. 610 ("Dispositional and Commitment Review"); Pa.R.J.C.P. 612 ("Modification or Revocation of Probation"). Moreover, as Appellant acknowledges and this Court has previously noted, a term of probation with no prescribed end date cannot extend beyond the jurisdiction of the juvenile court. Appellant's brief at 27 ("Granted, the juvenile court loses authority over the juvenile when he or she attains the age of 21. At the latest, probation should end at that time."); In re S.A.S., supra at 1109

("[The juvenile's] term of probation is still limited by the jurisdictional constraints of the Juvenile Act.").

With her last issue, Appellant contends that the juvenile court erred in requiring her to pay costs without first determining her ability to pay, and in not specifying the exact amount of costs in the dispositional order. Specifically, Appellant presents the following argument.

> Here, the record does not indicate any attempt by the [c]ourt to determine [Appellant's] ability to pay costs. Moreover, due process requires that she be informed of the amount that she must pay at the time of disposition, just like she must be informed of the length of time she can expect to be on probation. Costs could be 5 dollars, 50 dollars, 500 dollars, or 5,000 dollars. Maybe [Appellant] can handle earning some of the lesser amounts to pay costs, but there is no indication at all that she has the earning capacity at this time to make a $5,000 payment to the juvenile court. If there is such a "standard" amount imposed upon all juvenile defenders, surely the juvenile court can figure out that amount and tell the juveniles at their disposition hearings. Fundamental fairness requires it.

Appellant's brief at 30-31.

Appellant did not raise these issues before the juvenile court at the dispositional hearing or in her post-disposition motion, thereby depriving the juvenile court of the opportunity to address Appellant's claim.[1] Therefore, the claims are waived. See, e.g., In re B.T.C., 868 A.2d 1203, 1205 (Pa.Super. 2005) ("B.T.C. argues that the trial court imposed the restitution without

_____

[1] Appellant raised the claim for the first time in her Rule 1925(b) statement; however, the juvenile court did not address the issue in its Rule 1925(a) opinion.

- 12 -

considering . . . B.T.C.'s earning capacity.  However, we find this claim to be waived.  We have thoroughly scrutinized the transcript of the disposition hearing and B.T.C. . . . [never] objected to the restitution on these grounds. . . .").

Even if Appellant had not waived the claim, we would grant her no relief. The Juvenile Act provides that the court may order the juvenile to pay fines, costs, fees, or restitution upon consideration of, inter alia, the earning capacity of the child.  42 Pa.C.S. § 6352(a)(5).  This Court has explained that

> a juvenile's earning capacity can be determined by examining relevant factors such as:
>
> > the juvenile's mental ability, maturity and education; work history, if any; the likelihood of future employment and extent to which the juvenile can reasonably meet a restitution obligation; the impact of a restitution award on the juvenile's ability to acquire higher education and thus increase the juvenile's earning capacity; and the juvenile's present ability to make restitution.

Commonwealth v. B.D.G., 959 A.2d 362, 367-68 (Pa.Super. 2008) (en banc) (quoting In Interest of Dublinski, 695 A.2d 827, 830 (Pa. Super. 1997)).

The record includes two pre-disposition reports, detailing Appellant's development and family circumstances.  Pre-Disposition Report, 11/8/16, at 1-2; Pre-Disposition Report, 12/8/16, at 1-2.  Appellant testified at the adjudicatory hearing, enabling the juvenile court to gauge Appellant's verbal skills.  Appellant's testimony included reference to past employment.  N.T.,

12/15/16, at 81-82. Thus, although the record contains no express inquiry by the juvenile court specific to Appellant's earning capacity and ability to pay, the record does not support Appellant's claim that the juvenile court had no information relevant to the issue. Further, no relief is due on Appellant's complaint that "there is no indication at all that she has the earning capacity at this time" to make more than a small amount. While it is one factor to be considered, the law does not require that the juvenile have a present financial ability to make immediate payment. Dublinski, supra at 830. Appellant was thirteen years old at the time of the adjudication, suggesting that she has ample time to earn money before she turns twenty-one.

We do agree with Appellant that she is entitled to an itemized lists of costs for which she is responsible. However, she offers no authority for the proposition that the juvenile court is obligated to specify the numbers at the dispositional hearing or that the amounts must be detailed in the dispositional order itself. We have no doubt that Appellant has access to that information through the juvenile court or probation office.[2] See also In re C.A.G., supra

_____

[2] This circumstance highlights the reason this Court requires issues to be raised prior to appeal. Had Appellant timely sought to make that information part of the record, and thereby learned that the amount is higher than is appropriate for her earning capacity, she could have presented this Court with an argument not based upon speculation. Further, had she made such a request and been denied the information, we would be in a position to address that issue.

at 710-11 (discussing various statutorily-defined costs imposed on juveniles who are adjudicated delinquent).

In conclusion, Appellant has failed to persuade us that the juvenile court's dispositional order is the product of a manifest abuse of discretion. In Interest of J.D., supra.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/14/2018