**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Frank WALTON, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 6, 2012.
Filed Jan. 8, 2013.

* Retired Senior Judge assigned to the Superior    Court.

Richard J. Blasetti, Public Defender, Media, for appellant.

John J. Whelan, District Attorney, Media, for Commonwealth, appellee.

BEFORE: SHOGAN, WECHT, and STRASSBURGER *, JJ.

OPINION BY STRASSBURGER, J.:

Frank Walton (Appellant) appeals from the judgment of sentence entered following his convictions for possession of a controlled substance and possession with intent to deliver a controlled substance (PWID).[1] Appellant now challenges the ruling that denied his motion to suppress the evidence. For the reasons that follow, we vacate the judgment of sentence and remand for proceedings consistent with this opinion.

The facts of this case, as summarized by the suppression/trial court, are as follows:

> In the early afternoon of Sunday, March 20, 2011, Officer [Sean] Bridges [of the Ridley Township Police Department and Delaware County Drug Task Force] was in full uniform and in his marked patrol vehicle on a side street near MacDade Boulevard. Officer Bridges was watching activity at Tom & Jerry's, a local bar on MacDade Boulevard....
>
> Officer Bridges testified that he
>
> saw a white male and a white female in the parking lot kind of walking around, pacing back and forth. They were on and off their cell phones several times looking around. It looked kind of suspicious to me. Based on my experience I know that is how a lot of people will meet with drug dealers or drug dealers themselves will stand in a parking lot to meet them.
>
> [N.T., 8/17/2011, at 10.] As the officer looked on, [Appellant] pulled up next to

the male and female in a white Toyota. It appeared to the officer that "some type of deal was going to go down," [*id.* at 10–11,] so he immediately activated his lights and drove into the parking lot. The male and female ran away, and the officer exited his vehicle and approached [Appellant]. [Appellant] was "putting his hands down his pants ... in an attempt to conceal something," [*id.* at 11,] so the officer asked [Appellant] to step out of the vehicle. As [Appellant] stepped out, the officer observed a tip of a plastic sandwich bag in [Appellant's] waistband. The officer seized the bag and saw a white powdery substance inside that he believed was cocaine.

> Officer Bridges placed [Appellant] under arrest and found another bag of white chunky substance on his person. He also retrieved 73 plastic baggies and another baggie containing suboxone, a controlled substance, during an inventory search of [Appellant's] vehicle before it was towed.

Suppression/Trial Court Opinion, 4/27/2012, at 3–4. Thereafter, Appellant was arrested for possession of a controlled substance and PWID.

On July 28, 2011, Appellant filed an omnibus pre-trial motion challenging the validity of the traffic stop and subsequent arrest, and seeking suppression of the drugs obtained as a result. A suppression hearing was held on August 17, 2011, following which the trial court found that "law enforcement had reasonable suspicion to stop [Appellant's] vehicle and, subsequently, probable cause to suspect that [Appellant] was in possession of controlled substances based on the totality of the circumstances." Order, 9/8/2011. After a non-jury trial held October 12, 2011, Ap-

---

* Retired Senior Judge assigned to the Superior Court.

1. 35 P.S. § 780–113(A)(16) and (A)(30), respectively.

pellant was found guilty of all charges. On November 28, 2011, Appellant was sentenced to three to six years of incarceration on the conviction for PWID. The remaining charge of possession of a controlled substance merged for sentencing purposes. This timely appeal followed. Both Appellant and the suppression/trial court have complied with Pa.R.A.P. 1925.

On appeal, Appellant presents for our consideration the sole issue of:

> [Did] the [suppression/trial court err] in refusing to suppress the fruits of the warrantless vehicle stop [where] the seizing officer had no reasonable suspicion to detain, nor probable cause to arrest Appellant at the instant when the seizing officer ordered Appellant out of his car[, which] occurred before the officer saw the plain view contraband[?]

Appellant's Brief at 5.

■ The standard of review applicable to our analysis of this question is as follows.

> [I]n addressing a challenge to a trial court's denial of a suppression motion [we are] limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the [Commonwealth] prevailed in the suppression court, we may consider only the evidence of the [Commonwealth] and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Cauley*, 10 A.3d 321, 325 (Pa.Super.2010) (citation omitted). "It is within the suppression court's sole province as fact[-]finder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Elmobdy*, 823 A.2d 180, 183 (Pa.Super.2003) (citation omitted). Moreover, "[w]hen reviewing the propriety of a motion to suppress, we may consider the evidence presented both at the suppression hearing and at trial." *Commonwealth v. Charleston*, 16 A.3d 505, 516 (Pa.Super.2011).

Our review of the transcript from the suppression hearing and trial supports the court's factual findings. Moreover, Appellant does not dispute these findings. Thus, we must next determine if the court made proper legal conclusions given these findings.

Appellant claims that his suppression motion should have been granted because Officer Bridges' stop of Appellant's vehicle was unjustified. Specifically, he argues that the police had neither reasonable suspicion nor probable cause to stop his vehicle initially; thus, any observations of the police after the illegal stop should have been suppressed. Appellant's Brief at 8–9. Accordingly, Appellant avers that the judgment of sentence of the trial court should be vacated. *Id.* at 10. Conversely, the Commonwealth argues that the trial court properly determined that Officer Bridges had reasonable suspicion to conduct an investigative detention based upon the actions of the male and female in the parking lot coupled with Appellant's stop of his vehicle in the parking lot, and subsequent interaction with the male and female. Commonwealth's Brief at 7. We agree with Appellant that there was neither reasonable suspicion nor probable cause to stop and detain Appellant under the circumstances.

■ Interactions with police may be classified as mere encounters, investigative detentions, or formal arrests. *Commonwealth v. Ellis*, 379 Pa.Super. 337, 549 A.2d 1323, 1331 (1988).

Police may engage in a mere encounter absent any suspicion of criminal activity, and the citizen is not required to stop or to respond. If the police action becomes too intrusive, a mere encounter may escalate into an investigatory stop or a seizure. If the interaction rises to the level of an investigative detention, the police must possess reasonable suspicion that criminal activity is afoot, and the citizen is subjected to a stop and a period of detention. Probable cause must support a custodial interrogation or an arrest.

*Commonwealth v. Boswell,* 554 Pa. 275, 721 A.2d 336, 341 (1998) (citations omitted). The parties and suppression/trial court do not dispute that Officer Bridges initial encounter with Appellant was an investigative detention. Rather, the pivotal inquiry is whether Officer Bridges had reasonable suspicion that criminal activity was afoot prior to activating his overhead lights and effectuating the investigatory detention of Appellant.

When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing. A totality-of-the-circumstances approach allows the court to consider all facts at the officer's disposal and does not require the court to disregard those adduced during a valid interdiction, which is, in the present case, the traffic stop. Indeed, routine constitutional analysis requires courts to utilize facts gathered during each escalating phase of a police investigation in determining whether police acted properly as the interaction between police and citizen proceeded towards an arrest.

*Commonwealth v. Kemp,* 961 A.2d 1247, 1258–1259 (Pa.Super.2008) (en banc) (internal quotations and citations omitted).

The suppression/trial court offered the following analysis for finding that reasonable suspicion, which escalated into probable cause, existed:

[Appellant] seems to believe that Officer Bridges lacked probable cause or reasonable suspicion that criminal activity was afoot before he activated his dome lights and entered the parking lot. The [c]ourt reaches an altogether different conclusion: first, *before* Officer Bridges activated his dome lights, his observations of the activities in the parking lot, combined with his experience as a police officer and drug task force officer, gave him reasonable suspicion to believe that criminal activity was afoot. Second once he entered the parking lot, he quickly found probable cause to arrest [Appellant].

\*    \*    \*

Here, Officer Bridges is a seasoned police officer as well as a Delaware County Drug Task Force officer for two years with specialized training in the possession and sale of drugs. He has participated in hundreds of drug arrests, and he knows, based on his training and experience, that drug deals often take place in parking lots of local establishments. Based on his training and experience, the activity in the Tom & Jerry's parking lot gave Officer Bridges reasonable suspicion to believe that a drug sale was taking place. While this activity might have looked innocuous to a layperson, in the trained eyes of Officer Bridges, the nervous pacing of the male and female couple in the Tom & Jerry's parking lot, their repeated use of cell phones, the sudden arrival of [Appellant's] car, and his meeting with the couple were signs of a prototypical drug

deal. And, to repeat, Officer Bridges had reasonable suspicion of a drug deal *before* activating his dome lights and driving his patrol vehicle into the parking lot.

When Officer Bridges turned on his dome lights, his reasonable suspicion rapidly transformed into probable cause when (1) the male and female ran away, (2) he observed [Appellant] stuffing something down his pants, (3) he directed [Appellant] to exit his car as part of the investigatory detention, and (4) he observed a plastic sandwich bag (classic drug contraband) in plain view sticking out of [Appellant's] waistband. In the trained eyes of a drug task force officer such as Officer Bridges, a man stuffing a baggie down his pants during a vehicle stop constitutes probable cause of a drug transaction.

\* \* \*

Therefore, the [c]ourt properly denied [Appellant's] motion to suppress the baggie of cocaine seized from his person. Since the seizure of this baggie was constitutional, Officer Bridges had probable cause to arrest [Appellant], seize the second baggie of drugs from his person in a search incident to arrest, and then seize other drugs and contraband from the passenger compartment of [Appellant's] car in an inventory search.

Suppression/Trial Court opinion, 4/27/2012, at 4, 5–6, and 7.

■ After review of the certified record, we find that the trial court erred in concluding that Officer Bridges had reasonable suspicion that Appellant was involved in criminal activity allowing an investigative detention. At the suppression hearing, Officer Bridges testified that he "saw a white male and female in the parking lot kind of walking around, pacing back and forth," and that "[t]hey were on and off their cell phone several times looking around." N.T., 8/17/2011, at 10. Officer Bridges stated that this conduct "looked kind of suspicious to [him]." *Id.* He explained that based on his experience, he knew "that's how a lot people will meet with drug dealers or drug dealers themselves will stand in a parking lot to meet them." *Id.* When Appellant's vehicle pulled up to the couple in the parking lot and "they started talking to each other" Officer Bridges stated, "it looked like some type of deal was going to go down." *Id.* at 10–11. Testimony indicated that Officer Bridges was in a marked police car across the street from the parking lot at 1:51 p.m. and there was no indication that this was a high crime or drug intensive neighborhood. The record thus reflects insufficient evidence to justify an "investigative stop." Without more, Officer Bridges' observations are consistent with innocent activity and nothing more than a hunch a drug transaction was to transpire. *See Commonwealth v. Banks,* 540 Pa. 453, 658 A.2d 752 (1995) (holding that police officers' observation of defendant making street corner exchange at midday of unidentified item for cash, together with defendant's flight upon officer's approach did not give officer reasonable suspicion of drug transaction nor probable cause to arrest defendant; officer did not observe either drugs or containers commonly known to hold drugs being exchanged, did not observe multiple suspicious transactions, and was not responding to citizen's complaint or informant's tip); *Commonwealth v. DeWitt,* 530 Pa. 299, 608 A.2d 1030 (1992) (finding troopers did not have reasonable suspicion of criminal conduct to justify stop of automobile observed parked in church parking lot with its dome light illuminated and its outside lights extinguished, and which attempted to leave parking lot as troopers

approached; although police had previous notice from property owner of criminal behavior in parking lot, there was no evidence that vehicle in question was engaged in type of activity complained of; moreover, vehicle's flight, in and of itself, did not constitute reasonable suspicion of criminal conduct); *Commonwealth v. Peterson*, 17 A.3d 935 (Pa.Super.2011) (holding drug paraphernalia and drugs found during search of defendant incident to arrest were not admissible where police officer did not have reasonable suspicion to detain defendant for questioning, even though officer encountered defendant late at night in a high crime area and when officer approached defendant and several other males on the street corner, the other males fled but defendant remained); *Commonwealth v. Hudson*, 995 A.2d 1253 (Pa.Super.2010) (police officer lacked reasonable suspicion of criminal activity necessary to make investigative stop of defendant where officer, while repeatedly driving by grocery store, observed defendant over a period of time meet with three men, exchange cell phone numbers and walk into grocery store each time officer approached area). Accordingly, we deem the stop unlawful. Thus, the trial court erred in denying Appellant's suppression motion. Accordingly, we vacate the judgment of sentence, and remand for further proceedings consistent with this opinion.

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.