J-A11018-20

2020 PA Super 213

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VISMANI CANALES CARMENATES | : | No. 1045 MDA 2019 |

Appeal from the Suppression Order Entered June 25, 2019
In the Court of Common Pleas of Clinton County Criminal Division at
No(s): CP-18-CR-0000623-2018

BEFORE: PANELLA, P.J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

OPINION BY McLAUGHLIN, J.:                   **FILED SEPTEMBER 01, 2020**

The Commonwealth appeals from the order entered by the suppression court granting Vismani Canales Carmenates' motion to suppress. The Commonwealth argues the suppression court erred in relying on waived arguments, making factual findings that contradicted the testimony, and granting Carmenates' motion to suppress. We reverse.

Following a traffic stop, Carmenates was charged with possession of a controlled substance with the intent to deliver and possession of drug paraphernalia.[1] He filed an omnibus pre-trial motion, including a motion to suppress, contending the traffic stop was illegal and his consent to search the vehicle was not knowing, intelligent, or voluntary and/or invalid because it was the product of an unconstitutional detention.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. §§ 780-113(a)(30) and 780-113(a)(32), respectively.

The suppression court held a hearing on the motion to suppress, at which Trooper Jeremy Hoy and Carmenates testified. Trooper Hoy is a Pennsylvania State Trooper who was working in the Bureau of Criminal Investigation, Drug Law Enforcement Division, Central SHIELD Unit. N.T., 5/3/19, at 6. The SHIELD unit is a "criminal interdiction unit assigned primarily to work the interstates and highways in Pennsylvania." *Id.* The unit "work[s] major highways and interstates, conducting traffic stops, attempting to ferret out criminal activity to help slow down the flow of illegal activities in the Commonwealth of Pennsylvania." *Id.* at 7. The court accepted Trooper Hoy as an expert in the field of criminal interdiction. *Id.* at 13.

Trooper Hoy testified that in December 2018 he initiated a traffic stop of Carmenates. N.T., 5/3/19, at 13-15. He stated that Carmenates was not traveling at a safe distance from the truck in front of him.[2] *Id.* at 15. Trooper Hoy stated that Carmenates was driving slowly, had his hands in the 10 and

_____

[2] Trooper Hoy testified that :

> Behind that tractor-trailer was a white SUV following at approximately two car lengths at the most, much closer than is safe. There were also multiple other vehicles in the area traveling in the left lane. The tractor-trailer and SUV were moving slower than the flow of the other traffic in the area.

N.T., 5/3/19, at 15. He watched as the car drove past, and saw that the car did not change speeds. He stated, "[T]wo additional vehicles had passed him before going out of my eyesight, and he continued at that safe – or unsafe following distance the entire way until they were out of my eyesight. That's when I make the decision to pull out and . . . pursue that vehicle." *Id.* at 18.

two position, and he "appear[ed] very rigid." *Id.* at 15-16. Trooper Hoy pulled Carmenates' car over. *Id.* at 19. He noticed several large duffle bags and a suit case in the back, covered by a blanket and a big teddy bear, fast food and snacks in the car, a fast food drink and water in the cup holders, air fresheners, and "religious paraphernalia," all of which Trooper Hoy testified could be indicators of criminality. *Id.* at 27, 29-30.

Trooper Hoy testified that "[w]ith [his] training and past experiences, the fast food, the multiple drinks are signs of harder travel, longer travel." *Id.* at 30. He explained, "A trafficker is attempting to move illegal contraband from point A to point B, and their goal is to do that as fast as possible without being detected. Past experience and knowledge indicates that they want to eat in their car and make . . . minimal stops." *Id.* at 30-31. He further explained that air fresheners are "masking agents" and "religious paraphernalia, based on past training and experience, they put that in the car for good luck, for religious reasons to make a safe trip." *Id.* at 31. However, he admitted he did not actually smell the air freshener. *Id.* at 67.

Trooper Hoy said that when he learned Carmenates did not speak English, he decided to use an application called Google Translate. *Id.* at 28-29. Carmenates provided his license, insurance, and registration and his hands were "trembling" as he did so. *Id.* at 29. Trooper Hoy had Carmenates get out of his car and asked him to stand outside the police car while Trooper Hoy ran Carmenates' information. The Trooper stated that "[i]t was a little chilly," so he pointed the heat vents toward Carmenates to provide heat. *Id.*

at 32. Trooper Hoy testified that he asked Carmenates to come back to the police vehicle because it was "extremely hard to hear," and "when [Carmenates] indicated that he spoke Spanish, knowing that [Trooper Hoy] need to use Google Translate, it's safer for [him] to do that back in [his] vehicle," and noted he could hear Carmenates better. *Id.* at 32-33. He stated, "I felt that I needed to answer – or ask further questions . . . and to use Google Translate, [he] felt it was easier to have him there and available so [he] didn't have to go back and forth and extend the traffic stop." *Id.* at 34. On cross-examination, Trooper Hoy again said he asked Carmenates to come to the police car for safety reasons, as using Google Translate required him to take his eyes off the "individual[] in the vehicle . . . and play with my phone" and he had not "asked for permission to pat him down yet for weapons." *Id.* at 72.

Trooper Hoy testified that, during the exchange, Carmenates never indicated he did not understand a statement or question and that Trooper Hoy understood Carmenates' responses. *Id.* at 36. However, Trooper Hoy acknowledged that the app is "not 100 percent accurate at times." *Id.* at 79.

Trooper Hoy stated that Carmenates told him he was traveling to Rochester to visit a friend and see about work, and was planning to stay four to five days. *Id.* at 37. The Trooper testified that Carmenates' hands continued to tremble as they passed the phone back and forth to use Google Translate. *Id.* at 39.

- 4 -

Trooper Hoy testified that there were no issues with Carmenates' license, registration, or insurance, and that he issued a digital, not paper, warning. *Id.* at 62-63. Before returning Carmenates' documents, Trooper Hoy asked Carmenates if he could "see" his luggage. Carmenates agreed. *Id.* at 83-84. They went to the car, and Trooper Hoy pointed to a duffle bag, which Carmenates pulled out. *Id.* at 44. Trooper Hoy pointed again, and Carmenates opened it. *Id.* The duffle bags and other bags contained marijuana. *Id.* at 42, 51-52.

Carmenates testified that when Trooper Hoy pointed at things, he felt that he needed to "follow his orders." *Id.* at 98. He did not think he "had the option to say no, so [he] followed his commands." *Id.* Carmenates opened the bag because Trooper Hoy pointed at it. *Id.* at 98-99.

Following a hearing on the motion, the parties submitted supplemental briefs. At the hearing, Carmenates had objected to the admissibility of the Google Translate conversation based on hearsay. In his post-hearing submission, he withdrew this objection. Memorandum in Support of Omnibus Pre-Trial Motion, filed June 5, 2019, at Section II.E. Carmenates, however, continued to argue that the Google Translate testimony suffered from "issues related to reliability, or lack thereof," specifically "relating to the coercive nature of the detention and the fact that [Carmenates] did not knowingly, intelligently, or voluntarily consent to the search at issue." *Id.*

The court granted the motion to suppress. It found Carmenates did not provide a voluntary and knowing consent to the search. The Commonwealth

- 5 -

filed a timely notice of appeal, certifying that the order "will terminate or substantially handicap the prosecution." Notice of Appeal, filed June 27, 2019.

The Commonwealth raises the following issues:

> I. Whether the suppression court committed an error of law/abuse of discretion in failing to find that [Carmenates] waived various issues by failing to present them in his Omnibus Pretrial Motion?
>
> II. Whether the suppression court committed an error of law/abuse of discretion in making factual findings outside the record of the suppression hearing?
>
> III. Whether the suppression court committed an error of law/abuse of discretion in making factual findings contrary to the uncontroverted testimony of the Commonwealth's witness at the suppression hearing, PSP Trooper Hoy?
>
> IV. Whether the suppression court committed an error of law/abuse of discretion in failing to give due weight to the opinions and observations to Trooper Hoy based upon his knowledge, experience, training in the field of narcotics investigations?
>
> V. Whether the suppression court committed an error of law/abuse of discretion in concluding that [Carmenates] was the subject of an unconstitutional detention?
>
> VI. Whether the suppression court committed an error of law/abuse of discretion in determining that [Carmenates'] consent to search his vehicle and its contents was not voluntary?

Commonwealth's Br. at 4-5.

## I.    Waiver

The Commonwealth first maintains that Carmenates' motion failed to state with particularity the grounds on which he sought suppression. The Commonwealth concedes the omnibus motion included two separate motions

to suppress, but claims the court relied on grounds outside the two written motions when granting the motion. The Commonwealth further contends that the court erred by allegedly relying on Carmenates' objection to the Google Translate translation, which objection Carmenates withdrew. The Commonwealth claims that Carmenates' motion "was focused on the issues of (1) whether the initial stop of [Carmenates] was legal; and (2) whether the consent to search the vehicle was knowing, intelligent, and voluntary." It claims "any efforts by the suppression court to move outside of those two (2) limited issues is unwarranted." Commonwealth's Br. at 13.

Carmenates' motion was sufficiently specific and the suppression court did not improperly stray beyond the bounds of Carmenates' motion. Carmenates' motion put the Commonwealth on notice of the issues he intended to argue, that is, that the stop was illegal and that his consent to the search was not knowing, intelligent, or voluntary, and the Commonwealth apparently understood the motion well enough, as it knew to present evidence to the contrary. As for the basis of the suppression court's decision, the court decided the precise questions the Commonwealth asserts were the focus of Carmenates' motions. It does not identify any other alleged "effort by the suppression court" to go outside the arguments Carmenates made in his motion, and we have discovered none.

Regarding the court's consideration of the Google Translate evidence, it is true that Carmenates withdrew his hearsay objection to the Google Translate translation. However, the weight of such evidence still was for the

- 7 -

suppression court, and the court simply took into consideration the Trooper's admission that Google Translate is not 100% accurate and can include incorrect statements. This was not error.

## II. Factual Findings and Credibility Determinations

In its next two issues, the Commonwealth argues that the suppression court erred by making factual findings that contradicted the testimony of Trooper Hoy. The Commonwealth first claims that although Carmenates offered only limited testimony and Trooper Hoy's testimony was uncontradicted, the court's factual findings contradicted Trooper Hoy's testimony. As an example, the Commonwealth claims that the court erred in finding the weather was cold and that Carmenates' hands may have been shaking because of the cold. The Commonwealth also claims the court erred in finding there was a language barrier and Carmenates could not fully comprehend Trooper Hoy. It noted that Trooper Hoy stated there was no instance in which he asked a question that Carmenates did not understand, and that Carmenates said he understood that the Trooper wanted to see the luggage.

This claim lacks merit. The suppression court was not required to credit Trooper Hoy's testimony or make inferences in the Commonwealth's favor. The record supports a finding that it was cold. The stop occurred in December, and Trooper Hoy testified that he moved the vents in order to provide some heat for Carmenates. That the heater was on at all confirms that it was cold. Further, the court did not err in finding a language barrier existed. It is

undisputed that Carmenates did not speak English and Trooper Hoy did not speak Spanish and the two communicated using Google Translate. Trooper Hoy acknowledged the application was not 100% accurate, and it is undisputed that at the end of the encounter, Trooper Hoy used hand motions, rather than words, to direct Carmenates, and Carmenates understood and followed his directions.

Second, the Commonwealth claims that the court failed to credit the opinions and observations of Trooper Hoy. As an example, the Commonwealth notes that the court rejected Trooper Hoy's opinion that religious materials are an indication of criminal activity. It points out that Carmenates did not offer an expert. The Commonwealth argues that Trooper Hoy outlined the factors on which he based his reasonable suspicion that Carmenates was involved in criminal activity, and the court failed to accord the testimony weight.

We disagree that the suppression court was required to find reasonable suspicion existed merely because Trooper Hoy testified that he believed it did. **Commonwealth v. Holmes**, 14 A.3d 89, 96 (Pa. 2011) (determination of whether officer had reasonable suspicion is an objective determination and "[i]t is the duty of the suppression court to independently evaluate whether, under the particular facts of a case, an objectively reasonable officer would have reasonably suspected criminal activity was afoot"); **Commonwealth v. Walton**, 63 A.3d 253, 256 (Pa.Super. 2013) (noting the suppression court determined the credibility of witnesses and the weight to be given to their

testimony and finding officer lacked reasonable suspicion to conduct investigatory stop). Further, the suppression court did not determine whether reasonable suspicion existed. Rather, it suppressed the evidence because it concluded Carmenates did not knowingly, voluntarily, and intelligently consent to the search.

### III. Whether Consent was Knowing, Voluntary, and Intelligent

In its final two issues, the Commonwealth claims that the suppression court made incorrect conclusions of law. It claims the court incorrectly applied *United States v. Lopez*, 817 F.Supp.2d 918 (S.D. Miss. 2011), and misapplied *Commonwealth v. Strickler*, 757 A.2d 884 (Pa. 2000). The Commonwealth argues that the court placed significance on the fact that the Trooper did not advise Carmenates of his *Miranda*[3] rights or his ability to refuse to consent to the search. The Commonwealth points out, however, that the *Strickler* court acknowledged that an ability to refuse a search is not dispositive of the issue of voluntariness. The Commonwealth also claims the suppression court exaggerated other factors, such as the cold weather and a language barrier. The Commonwealth claims that the encounter was cordial, and Trooper Hoy did not demand to see the contents of the rear compartment, but merely asked to see the luggage and Carmenates willingly opened the bag after Trooper Hoy pointed.

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

When we consider a Commonwealth appeal from an order granting a motion to suppress, we "consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted." *Commonwealth v. Korn*, 139 A.3d 249, 252 (Pa.Super. 2016) (quoting *Commonwealth v. Miller,* 56 A.3d 1276, 1278–1279 (Pa.Super. 2012)). We then assess the suppression court's factual findings to determine whether the record supports them; we review the court's legal conclusions *de novo*. *Id.* at 253.

"The Fourth Amendment protects against unreasonable searches and seizures." *Strickler*, 757 A.2d at 888. A warrantless search is unreasonable unless an exception applies. *Id.* "One such exception is consent, voluntarily given." *Id.*

The "Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances." *Strickler*, 757 A.2d at 901. "[K]nowledge of the right to refuse to consent to the search is a factor to be taken into account, [but] the Commonwealth is not required to demonstrate such knowledge as a prerequisite to establishing voluntary consent." *Id.* Further, "the maturity, sophistication and mental or emotional state of the defendant (including age, intelligence and capacity to exercise free will), are to be taken into account." *Id.*

- 11 -

To determine whether a consent is valid when provided close in time to a traffic stop, courts consider various factors to determine whether the consent was provided during a mere encounter that followed the traffic stop or during the investigative detention that occurred due to the traffic stop:

> A non-exclusive list of factors to be used in assessing whether police conducted a mere encounter after completion of a traffic stop includes: 1) the presence or absence of police excesses; 2) whether there was physical contact; 3) whether police directed the citizen's movements; 4) police demeanor and manner of expression; 5) the location of the interdiction; 6) the content of the questions and statements; 7) the existence and character of the initial investigative detention, including its degree of coerciveness; 8) "the degree to which the transition between the traffic stop/investigative detention and the subsequent encounter can be viewed as seamless, ... thus suggesting to a citizen that his movements may remain subject to police restraint,"; 9) the "presence of an express admonition to the effect that the citizen-subject is free to depart is a potent, objective factor;" and 10) whether the citizen has been informed that he is not required to consent to the search.

*Commonwealth v. Moyer*, 954 A.2d 659, 665 (Pa.Super. 2008) (*en banc*).

The Pennsylvania Supreme Court has also noted that because "both the tests for voluntariness [of consent] and for seizure centrally entail an examination of the objective circumstances surrounding the police/citizen encounter to determine whether there was a show of authority that would impact upon a reasonable citizen-subject's perspective, there is a substantial, necessary overlap in the analyses." *Strickler*, 757 A.2d at 901-02.

Here, the suppression court concluded that Carmenates' consent was not knowing, intelligent, and voluntary. The court observed that police did not

read Carmenates his *Miranda* rights or tell him he could refuse consent. The court further pointed out that the traffic stop was lengthy and the Trooper directed Carmenates to stand outside in the cold and otherwise directed his actions, and there was a language barrier. The court referenced *Lopez*, which it stated was similar, but acknowledged was not binding. It noted that in *Lopez*, the federal court concluded consent was not voluntary where: the defendant had been in custody for 20 minutes; the defendant's license had not been returned and he had not been issued a citation or warning; and a language barrier existed, as the defendant spoke Spanish and the Trooper spoke English. 1925(a) Op. at 12-13. Further, in *Lopez*, the government had not presented evidence of the defendant's education, intelligence, or maturity. *Id.* The court then concluded that considering all the factors, Carmenates' consent was not knowing, intelligent, or voluntary.

On review of the totality of the circumstances, we do not agree that Carmenates' consent was not knowing, intelligent, and voluntary. The Trooper's testimony that he observed Carmenates following the truck in front of him too closely for safety was sufficient to permit the initial stop. There was no evidence of police excesses or physical contact, and nothing suggests the Trooper's demeanor and manner of expression or the content of his questions and statements were coercive to the extent as to overbear Carmenates' ability to refuse consent. The Trooper was not joined by any additional troopers, did not draw his weapon, and did not employ aggressive language or gestures. Indeed, all evidence was of an even-tempered interaction. *See Strickler*, 757

A.2d at 900 (finding consent voluntary in the absence of such actions). Furthermore, the Trooper returned Carmenates' documents to him and gave him a mere warning before asking to see the luggage, lessening any objective justification for Carmenates' feeling compelled to consent.

Most important, Carmenates understood the Trooper wanted him to open his luggage when the Trooper pointed at it, and he exhibited his consent by opening it for him without complaint. Carmenates' testimony that he subjectively felt he had to follow the Trooper's instructions does not require suppression. Rather, the test is an objective one. *See Strickler*, 757 A.2d at 901-02. There is no evidence the Trooper acted in a way that would reasonably have coerced or pressured Carmenates into giving consent.

Further, there was no need for Trooper Hoy to read Carmenates his *Miranda* rights because there was no custodial interrogation, as Carmenates was not in custody. Furthermore, the trooper had good reason to ask Carmenates to get out of his vehicle, as he testified it was for his safety while using the Google Translate application. Although the Trooper and Carmenates spoke different languages, Google Translate enabled Carmenates and Trooper Hoy to understand each other sufficiently, and the two communicated successfully by gestures when the Trooper wanted Carmenates to open the luggage. Under the totality of the circumstances, we conclude the Commonwealth carried its burden to establish that Carmenates' consent was valid.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/1/2020