J-S25035-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
AUTHOR WIMER :
:
Appellant : No. 3010 EDA 2022

Appeal from the Judgment of Sentence Entered October 19, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004581-2021

BEFORE: NICHOLS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED AUGUST 15, 2023**

Author Wimer (Appellant) appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his nonjury convictions of possession with intent to deliver controlled substances (PWID), criminal conspiracy, and possession of controlled substances.[1] The trial court imposed an aggregate sentence of two-and-one-half to five years' incarceration, followed by three years' probation. On appeal, Appellant challenges the trial court's denial of his motion to suppress and the sufficiency of the evidence supporting his conviction of conspiracy. For the reasons below, we affirm.

_____

[1] 35 P.S. § 780-113(a)(16), (30); 18 Pa.C.S. § 903(c).

I. Facts and Procedural History

The facts underlying Appellant's convictions, as developed during the suppression hearing, are as follows. The disputed transaction occurred at the intersection of A Street and Indiana Avenue in Philadelphia. *See* N.T., 3/15/22, at 10, 20. This intersection is known as a high drug-trafficking area. *Id.* at 11-12. On March 19, 2021, at 2:00 pm, Philadelphia Police Officer Bryan Outterbridge and his partner Officer Wright arrived at the location for surveillance.[2] *Id.* at 10-11. At approximately 2:05 pm, the officers observed a man, Alvarez,[3] engage in "a hand-to-hand transaction" with Jose Pagan on the northeast corner of the intersection. *Id.* at 18, 23-24. Pagan was later stopped by a police officer, who retrieved nine clear Ziploc packets from his person. *Id.* at 18-19. Each bag contained a blue glassine insert stamped with the words "New Time" and an off-white powder, later confirmed to be heroin. *Id.* at 19.

At 2:10 pm, the officers observed Lord Berrios conversing with Edward Nersisian on the northwest corner of the intersection. N.T. at 12. Nersisian gave Berrios money in exchange for some small objects. *Id.* On that same corner, around the same time, the officers observed Appellant and an unknown black male having a conversation. *Id.* at 12-13. During this interaction, Appellant reached into a white plastic bag he was carrying and

---

[2] Officer Wright's first name is not in the record.

[3] Alvarez's first name is not in the transcript.

took out some small objects which he handed to the unknown black male. *Id.* at 13. The interaction lasted less than one minute, and the officers were unable to see what was inside the bag. *Id.* at 16. Officer Outterbridge testified that he observed the transactions occurring on the west side of the street from his position inside his vehicle parked on the east side of the street. *See id.* at 15. Once the transactions concluded, Nersisian and Appellant began walking southbound on A Street. *Id.* at 13.

Officer Outterbridge provided a description of the men and their direction of travel to fellow officers to have them both stopped. *See* N.T. at 13-14. The officer who stopped Nersisian recovered from him nine clear Ziploc packets with blue glassine inserts stamped with the words "New Time." *Id.* at 14. Each packet contained off-white powder, later confirmed to be heroin. *Id.* The officer who stopped Appellant recovered the following from inside the white plastic bag: (1) 304 clear Ziploc packets with blue glassine inserts stamped with the words "New Time," containing off-white powder, later confirmed to be fentanyl; (2) five clear sandwich bags knotted at the top containing 116 orange flip-top containers, each containing an off-white chunky substance, later confirmed to be crack cocaine; and (3) $299 cash.[4] *See id.* at 14, 46, 47.

---

[4] Officer Outterbridge's testimony that the police recovered "**160** orange flip top containers" appears to be a misstatement. *See* N.T. at 14 (emphasis added).

Appellant was arrested and charged with PWID, conspiracy, and possession of controlled substances. On October 26, 2021, Appellant filed an omnibus pretrial motion seeking to suppress the drugs recovered by police because he alleged the "[o]fficers seized his person, unlawfully and without probable cause, and conducted a search[;]" thus, he argued the evidence procured should not be admitted. Appellant's Omnibus Pretrial Motion, 10/26/21, at 1 (unpaginated).

The court conducted a suppression hearing on March 15, 2022, and denied Appellant's motion. *See* N.T. at 39. That same day, Appellant waived his right to jury trial and proceeded immediately to a bench trial, primarily on stipulated facts. *See id.* at 39-48. The Commonwealth presented one expert witness who opined that Appellant possessed the drugs recovered from him with the intent to distribute them. *See id.* at 49-57. Thereafter, the trial court found Appellant guilty of all charges. *Id.* at 58.

On October 19, 2022, the trial court sentenced Appellant to two concurrent terms of two-and-one-half to five years' incarceration, followed by three years' probation on the charges of PWID and conspiracy; no further penalty was imposed for the simple possession conviction. Appellant filed a timely notice of appeal on November 16th. On November 21st, the trial court

J-S25035-23

ordered Appellant to file a statement pursuant to Rule 1925(b), which

Appellant timely filed on December 5th.[5]

## II. Questions Presented

Appellant raises the following issues on appeal:

1. Did the trial court err in denying Appellant[']s motion to suppress physical evidence, since the police officers did not have reasonable suspicion or probable cause to stop, arrest, and/or search Appellant, and/or to seize anything from him, and said items should not have been admitted into evidence?

2. Was the evidence insufficient to sustain Appellant's conviction and judgement [sic] of sentence for conspiracy?

Appellant's Brief at 2 (some capitalization omitted).

## III. Denial of Motion to Suppress

Appellant first argues the trial court erred in denying his motion to suppress. Specifically, he contends the officers did not have "reasonable suspicion or probable cause to stop, arrest, and/or search" him, so that none of the items seized from him should have been admitted as evidence. Appellant's Brief at 6. Appellant further asserts the officers' observation of his interaction with the unknown male was "consistent with innocent activity and

---

[5] The certified record does not include a trial court opinion. As the Commonwealth explains in its brief, the Honorable Mia Roberts Perez, who presided over Appellant's suppression hearing and nonjury trial, was commissioned as a federal judge before she had the opportunity to file an opinion in this matter. *See* Commonwealth's Brief at 1 n.1.

nothing more than a hunch a drug transaction was to transpire." ***Id.*** (citation & quotation marks omitted).

The standard of review for a motion to suppress is as follows:

[An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court] is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

***Commonwealth v. Way***, 238 A.3d 515, 518 (Pa. Super. 2020) (citation omitted). "Our scope of review is limited to the evidentiary record from the suppression hearing." ***Id.*** (citation omitted).

Interactions between civilians and police officers fall into one of three categories, each requiring a different degree of validation.

These categories include (1) a mere encounter, (2) an investigative detention, and (3) custodial detentions. The first of these, a "mere encounter" (or request for information), which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Baldwin*, 147 A.3d 1200, 1202 (Pa. Super. 2016) (citation omitted).

Where, as here, the defendant was seized and immediately searched by police, the Commonwealth was required to establish the officer had probable cause to arrest.[6] *See Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa. 2009).

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a probability, and not a prima facie showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

*Commonwealth v. Brogdon*, 220 A.3d 592, 599 (Pa. Super. 2019) (citation omitted). "Probable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most reasonable inference." *Id.* (citation omitted). Moreover, while "a police officer's experience may fairly be regarded as a relevant factor in determining probable cause[, the Pennsylvania Supreme Court has] cautioned [trial] courts that they cannot simply conclude that probable cause existed based upon nothing more than the number of years an officer has spent on the force."

---

[6] The Commonwealth agrees that probable cause is the correct standard. *See* Commonwealth's Brief at 7-8.

*Commonwealth v. Delvalle*, 74 A.3d 1081, 1085 (Pa. Super. 2013) (citation & quotation marks omitted). "Rather, the officer must demonstrate a nexus between his experience and the search, arrest, or seizure of evidence." *Id.* (citation omitted).

Based on the totality of the circumstances, including Officer Outterbridge's observations and narcotics experience, we agree probable cause existed to stop and search Appellant. Of Officer Outterbridge's 16 years on the force, he spent 13 years assigned to a narcotics unit covering outdoor narcotic sales. *See* N.T. at 8-9. As a current member of the Narcotics Strike Force, his primary duties include narcotic surveillance, and he has participated in over 1,000 narcotic investigations during the course of his career. *See id.* at 9-10. Officer Outterbridge also testified he had conducted at least 200 or 300 narcotics investigations at the A Street and Indiana Avenue intersection alone, and had recovered primarily heroin, fentanyl, and crack. *See id.* at 11. Furthermore, he observed similar drug transactions, where no money traded hands, at least 50 times at that location, and "well over 100" times during his career. *See id.* at 17-18.

To an officer trained in narcotics surveillance, Appellant's interaction with the unknown black male took a step beyond mere innocent conduct. The interaction occurred at a high drug-trafficking area where two other drug transactions had occurred within the last ten minutes. N.T. at 11-13, 18-19. Although the exchange lasted less than one minute, Officer Outterbridge saw

Appellant hand the male a small item, and then leave in the same direction as Nersisian, who had just completed a drug transaction. *Id.* at 12-13, 16. Officer Outterbridge testified that based on his experience, he was "100 percent certain" Appellant was involved in a "narcotics transaction". *Id.* at 16.

Appellant cites several cases for the proposition that an officer's observation of an exchange of unknown items on a public street is insufficient to establish probable cause to arrest. *See* Appellant's Brief at 6. We conclude those cases are distinguishable.

In *Commonwealth v. Banks*, 658 A.2d 752, 752 (Pa. 1995), a police officer observed the defendant hand an unknown object to a female in exchange for money. The Supreme Court held the evidence was insufficient to establish probable cause because the police officer merely "chanced upon a single, isolated exchange." *Id.* at 753. Moreover, the Court noted this was "**not** a case where a trained narcotics officer observed either drugs or containers commonly known to hold drugs being exchanged." *Id.* Nor did the officer observe "multiple, complex, suspicious transactions" or act upon a citizen's complaint or informant's tip. *Id.* However, in Appellant's case, Officer Outterbridge, who was an experienced narcotics officer, maintained surveillance in a known drug area, and he observed several "suspicious transactions" at the same intersection within a short period of time.

In *Commonwealth v. Walton*, 63 A.3d 253, 255 (Pa. Super. 2013), an officer observed two people pacing in a parking lot while talking on their cell phones, which the officer described as "suspicious." The defendant then arrived in his car and began talking to the people. *Id.* Believing "some type of deal was going down," the officer immediately approached the defendant and conducted an investigative detention. *Id.* (record citation omitted). A panel of this Court concluded the officer did not possess "reasonable suspicion that [the defendant] was involved in criminal activity allowing an investigative detention." *Id.* at 258. The panel explained that although the officer was a trained narcotics officer and in a marked police car, "there was no indication that [the area] was a high crime or drug intensive neighborhood." *Id.* Moreover, the defendant was apprehended **before** any drug transaction transpired. The *Walton* Court concluded that the officer's observations were "consistent with innocent activity and nothing more than a hunch a drug transaction was to transpire." *Id.* Here, however, Appellant was arrested **after** Officer Outterbridge, an experienced narcotics officer, observed a suspected drug transaction in a high drug trafficking area.

Instead, we find this Court's decision in *Commonwealth v. El*, 933 A.2d 657 (Pa. Super. 2007), instructive. In *El*, narcotics agents observed the defendant exchanging money for a clear plastic bag he pulled from his waistband. *Id.* at 659. When the officers approached him, he shoved the bag back into his pants and tried to enter a nearby car before they apprehended

him. *Id.* The officers immediately searched him and recovered drugs and money. *Id.* A panel of this court held that "probable cause exists to search a suspect incident to an arrest when a trained and experienced narcotics officer observes two individuals exchange money for what appears to be drugs." *Id.* at 659. The panel emphasized that the officer "witnessed the drug trafficking techniques frequently used in the neighborhood," which enabled him to infer from the circumstances that a drug transaction occurred. *Id.* at 662. Similarly, in the present case, Officer Outterbridge was in the best position to identify narcotics activity because he had surveilled the area and conducted 200 to 300 drug investigations at the A street and Indiana Avenue intersection. N.T. at 11. Officer Outterbridge's extensive experience also allowed him to infer a drug transaction was taking place because he had observed similar transactions where no money was exchanged. N.T. at 17-18.

Therefore, although Appellant's activities seem innocent in isolation, the surrounding circumstances were sufficient to establish probable cause. Thus, Appellant's first argument warrants no relief.

### IV. Sufficiency of Evidence

Next, Appellant claims there was insufficient evidence to convict him of conspiracy. He argues the officers merely observed him "handing unknown objects to an unknown black male[,]" who was not apprehended. Appellant's Brief at 7. Moreover, although the officer observed other narcotics

transactions with a short period of time at the same intersection, Appellant avers the Commonwealth presented no evidence as to his shared criminal intent because he was not in the area at the time of the prior drug transaction, and he was not seen interacting with any individuals other than the unknown black male. *See id.*

Our legal standard of review for a sufficiency of the evidence claim is as follows:

> We assess the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict-winner. We must determine whether there is sufficient evidence to enable the fact-finder to have found every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the factfinder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.

*Commonwealth v. Bowens*, 265 A.3d 730, 740–41 (2021), (*en banc*) *appeal denied*, 279 A.3d 508 (Pa. 2022).

The definition of criminal conspiracy is as follows:

A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which

constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903(a)(1)-(2).

Thus, to convict Appellant of criminal conspiracy:

The Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent, and (3) an overt act done in furtherance of the conspiracy. Circumstantial evidence may provide proof of the conspiracy. The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.

Additionally[,] an agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

*Commonwealth v. Beatty*, 227 A.3d 1277, 1283–84 (Pa. Super. 2020) (citation omitted).

Furthermore, "[t]he Commonwealth does not have to prove that there was an express agreement to perform the criminal act; rather, a shared understanding that the crime would be committed is sufficient." *Commonwealth v. Nypaver*, 69 A.3d 708, 715 (Pa. Super. 2013) (citation omitted). This Court has established four factors to determine whether a conspiracy existed: "(1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the

- 13 -

crime; and (4) in some situations, participation in the object of the conspiracy." *Id.* (citations & quotation marks omitted).

Viewed in the light most favorable to the Commonwealth, the evidence supports the conclusion that Appellant shared an intent to distribute narcotics with Pagan, Nersisian, and the unknown black male. Notably, police found the same "New Times" glassine inserts in the drug packages recovered from Appellant, Pagan, and Nersisian. N.T. at 14, 18-19. All three individuals conducted transactions at the same intersection within a five-minute period of time, and Appellant walked in the same direction as Nersisian after concluding his transaction. *Id.* at 12-13, 18.

Furthermore, at the stipulated trial, the Commonwealth presented Philadelphia Police Officer Kevin Keys as an expert in the packaging, use, sales, and distribution of narcotics. *See* N.T. at 49. Officer Keys opined that "the narcotics possessed in this particular incident were possessed with the intent to distribute." *Id.* at 50. He based his opinion on the following: (1) the average weight of each drug packet was consistent with the amount retailers would sell to buyers; (2) the total retail value of the drugs allowed a distributor to make a significant profit margin; (3) the mix of fentanyl and crack cocaine matched drug buyers' habits; (4) Appellant had more money on his person than the average drug user; (5) the total value of cash and drugs Appellant possessed was worth almost $4,000; (6) Officer Outterbridge observed the transaction take place from within the bag, which only contained

drugs and nothing else. **_See id._** at 50-54. Thus, we conclude the evidence was sufficient to establish an association between the conspirators and Appellant's participation in the object of the conspiracy, *i.e.*, the sale of narcotics. **_See Nypaver_**, 69 A.3d at 715.

Lastly, Appellant claims his participation in a conspiracy to distribute drugs is unfounded because the unknown male could not be apprehended and confirm whether Appellant gave him drugs. **_See_** Appellant's Brief at 7. Conversely, Appellant had nothing but drugs inside his bag, and the above facts suggest he possessed the fentanyl and cocaine with an intent to distribute rather than to consume it himself. N.T. at 54.

For the foregoing reasons, we conclude there was sufficient evidence to convict Appellant of criminal conspiracy.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/15/2023

- 15 -